**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| **JOHN ROBERT SMITH, SHIRLEY HALL and GENE WALKER** | **PLAINTIFFS** |
| **V.** | **CIVIL ACTION NO. 3:01-CV-855WS** |
| **ERIC CLARK, Secretary of State of Mississippi; MIKE MOORE, Attorney General for the State of Mississippi; RONNIE MUSGROVE, Governor of Mississippi; MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE; and MISSISSIPPI DEMOCRATIC EXECUTIVE COMMITTEE** | **DEFENDANTS** |
| **V.** | |
| **BEATRICE BRANCH; RIMS BARBER; L. C. DORSEY; DAVID RULE; JAMES WOODARD; JOSEPH P. HUDSON; and ROBERT NORVEL** | **INTERVENORS** |

---

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO AMEND FINAL JUDGMENT**

---

No party to this action disputes that the Congressional district lines placed into effect by this Court's final judgment of February 26, 2002, have become by the passage of time inconsistent with the United States Constitution. The parties dispute only when and how this Court's judgment must be displaced.

Indeed, the parties display only a mild disagreement over when action must be taken. All parties acknowledge that candidates for Congress must qualify to run by January 13, 2012. Those candidates and the voters they seek to represent deserve to know the district lines far enough in advance to make prudent plans. Attorney General Hood and Secretary of State Hosemann ask

this Court to await the statutory deadline of December 4, 2011, set by Miss. Code Ann. §5-3-123 (Rev. 2002) for the report of the Standing Joint Congressional Redistricting Committee. Hood Response ¶¶ 4-5; Secretary of State Response ¶ 1. The Republican Party will be prepared to go to trial either before or after that deadline, as this Court should please. However, should this Court choose to await a December trial, it should promptly order the parties to take all steps necessary to prepare for trial.

As for how the new plan should be devised, Secretary Hosemann agrees with plaintiffs, Governor Barbour, and the Republican Party that this Court should exercise its jurisdiction to make any necessary adjustments. Secretary of State Response ¶ 3. General Hood and the Branch intervenors do not want this Court to act at all. Hood Response ¶ 9; Branch Response at 1. General Hood says that the fate of this Court's judgment should be decided in "a new lawsuit, if necessary, filed by a party with standing to raise the claims that would be the basis for requested relief." Hood Response ¶ 9. However, neither General Hood nor the Branch intervenors suggest who that party might be or when that new suit might be filed. As the inexorable deadline of January 13, 2012, approaches, there is no reason why this Court cannot amend its judgment at the request of the Republican Party, Governor Barbour, and plaintiffs, who, under the undisputed allegations of their complaint and the results of the 2010 census, continue to "live and vote in overpopulated districts." Branch Response at 1.

## ARGUMENT

I.  **PLAINTIFFS AND THE REPUBLICAN PARTY HAVE STANDING TO ASK THIS COURT TO ACT.**

General Hood argues that the Republican Party lacks standing "to initiate" a claim for a valid redistricting plan. Hood Response ¶ 6. The Republican Party has not initiated anything. The

Republican Party is a defendant in this action. For a decade it has faithfully discharged the obligations imposed upon it by this Court's final judgment of February 26, 2002. If this Court does not change its judgment, the Republican Party will faithfully execute it once again in 2012.

However, the Republican Party has called to this Court's attention the fact that its 2002 judgment has become constitutionally obsolete because of population changes over the last ten years. For that reason, the Republican Party has suggested to this Court that, in the words of Fed.R.Civ.P. 60(b)(5), "applying [the judgment] prospectively is no longer equitable." Rule 60(b) explicitly states that, "[o]n motion and just terms, the court may relieve a party … from a final judgment." There is no doubt that the Republican Party is a party to this case and is subject to the 2002 judgment. The reports abound with cases in which defendants have been allowed to seek relief from judgment under Rule 60(b). See, *e.g.*, *In re Scott,* 163 F.3d 282, 284 (5th Cir. 1998) (prison litigation); *Sullivan v. Houston Ind. Sch. Dist.*, 475 F.2d 1071, 1078 (5th Cir. 1973) (school discipline); *Wright v. County School Bd. of Greensville County*, 309 F.Supp. 671, 678 (E.D. Va. 1970), rev'd on merits, 442 F.2d 570 (4th Cir. 1971), rev'd, 407 U.S. 451 (1972) (school desegregation).  General Hood may be the first litigant ever to suggest that a defendant lacks standing to move for relief under Rule 60(b).

General Hood recognizes in a footnote that plaintiffs have joined the Republican Party in moving for relief from judgment, but claims that they have not "met their burden" of establishing standing. Hood Response at 3 n.4. To the contrary, the complaint plaintiffs filed ten years ago continues to establish their standing by alleging their injury from malapportioned Congressional districts. Paragraph 5 of that complaint alleges that John Robert Smith is a registered voter in Lauderdale County, that Shirley Hall is a registered voter in Rankin County, and that Gene Walker is a registered voter in Scott County. The plan imposed by this Court's 2002 final

3

judgment places the entirety of each of these three counties in the Third Congressional District. *Smith v. Clark,* 189 F.Supp.2d 512 (S.D. Miss. 2002). Because the Third District is overpopulated by 15,100 people, Motion Ex. A, plaintiffs qualify as "parties who live and vote in overpopulated districts." Branch Response at 1. Their prayer for relief sought to replace the current unconstitutional districting statute, Miss. Code Ann. §25-15-1037 (Rev. 2007), with "a new, constitutional districting plan," Complaint at 6, and their allegations of standing allow them to continue to seek the same relief today.[1]

Because plaintiffs plainly have alleged standing to seek relief in the first instance, and because the Republican Party has standing to seek relief from judgment under Rule 60(b)(5), this Court should proceed to determine any necessary amendments to its 2002 judgment.[2]

## II. BECAUSE THIS COURT'S 2002 FINAL JUDGMENT HAS PROSPECTIVE APPLICATION, RELIEF IS AVAILABLE UNDER RULE 60(b)(5).

General Hood's argument that this Court's final judgment of February 26, 2002, lacks "prospective application" under Rule 60(b)(5), Hood Response ¶ 7, is contradicted by his own actions. The "prospective application" of this Court's judgment was plainly recognized by the

---

[1] Because the fact of plaintiffs' injury is apparent from the undisputed record, it would elevate form over substance to require them to supplement their original complaint. If this Court believes it necessary to revise the original pleadings, it should treat plaintiffs' joinder of the Republican Party's motion as a motion for leave to supplement under Fed.R.Civ.P. 15(d) so that the resolution of this dispute before the qualification date of January 13, 2012, will not be unduly delayed.

[2] General Hood erroneously suggests that "a party with standing to raise the claims that would be the basis for requested relief" may file "a new lawsuit" under Fed.R.Civ.P. 60(d)(1). Hood Response ¶ 9 & n.8. The "independent action to relieve a party from a judgment" mentioned by Rule 60(d)(1) is brought, not by a non-party, but by a defendant who has a good defense to the original action. "Resort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances." 11 C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* §2868 at 397-98 (2d ed. 1995). Neither General Hood nor the Branch intervenors give any reason to believe that those "unusual and exceptional circumstances" are presented here. In any event, the Fifth Circuit has found little difference between the two procedures. "Where the adverse party is not prejudiced … a 60(b) motion may be treated as the institution of an independent action." *Bankers Mtg. Co. v. United States*, 423 F.2d 73, 77 n.7 (5th Cir. 1970).

Supreme Court of Mississippi in *Mauldin v. Branch*, 866 So.2d 429 (Miss. 2003), to which General Hood's predecessor and the Branch intervenors were parties.[3] The Supreme Court explicitly held that Miss. Code. Ann. §23-15-1039 (Rev. 2007) required the entire Congressional delegation to be elected at large and that no constitutional impediment precluded its enforcement. *Id.*, at 434-35. However, the Court refused to order that the statute be enforced, explaining:

> Due to the Legislature's failure to act, the State is currently under a federal court injunction ordering that the State use the congressional districts drawn by the three-judge court. This injunction will remain in place until that court vacates it or the Legislature draws a redistricting plan which is then federally precleared under §5 [of the Voting Rights Act, 42 U.S.C. §1973c]. Therefore, at-large elections cannot be held until the injunction is vacated.

*Id.*, at 435-36 (footnote omitted).

Although the Branch intervenors, both major political parties, and all three elected members of the State Board of Election Commissioners were parties to the *Mauldin* appeal, none of them ever asked the Supreme Court to alter its interpretation of this Court's final judgment.[4] Had General Hood believed that characterization to constitute unenforceable dicta, he would have been duty bound to advise his fellow members of the State Board of Election Commissioners to conduct at-large elections for the Congressional delegation in 2004 and in subsequent years. Had he done so, however, there can be little doubt that the Branch intervenors

---

[3] Although the members of the State Board of Election Commissioners were named as defendants in that case, as in this one, the Attorney General did not file a brief on their behalf. *Id.*, at 433. General Hood replaced his predecessor in office before the motion for rehearing was due in *Mauldin*, but he filed no such motion, nor did he respond to the motion filed by the Branch parties, attached hereto and made a part hereof as Exhibit 1.

[4] The Branch parties unsuccessfully challenged the Supreme Court's determination of the validity of §23-15-1039, but they did not challenge the Supreme Court's conclusion that enforcement of the statute was blocked by this Court's 2002 judgment. Ex. 1 at 6-8.

5

would have promptly pursued a contempt motion before this Court. See *Sullivan*, 475 F.2d at 1078 (refusing to lift injunction because of "threat of a contempt judgment").[5]

Just last month, the Fifth Circuit recognized that the parties may move to amend an injunction in a voting rights case. *League of United Latin American Citizens v. City of Boerne*, ___F.3d ___, 2011 WL 4471037 (5th Cir. Sept. 28, 2011). Plaintiff and defendants jointly moved to modify an injunction prescribing the method of city council elections. *Id.*, at *1. The Court held that "federal courts have continuing power to modify existing injunctions, including consent decrees, when changing circumstances make it appropriate to do so." *Id.*, at *9. As an example, the Court hypothesized a voting rights case in which "new census data became available, and the parties agreed on adjustments to the districts based on the new data." *Id.*, at *10. Because a court has authority to implement an agreement, it certainly has authority to resolve a disagreement. The Court made clear that the procedures for modifying an injunction are prescribed by Rule 60(b), and particularly Rule 60(b)(5). *Id.*, at *11.

Nothing in any of the cases cited by General Hood suggests that the final judgment actually entered by this Court lacks "prospective application". Where plaintiffs filed a new redistricting action seeking to change a redistricting order entered in an earlier case they themselves had filed, the Fifth Circuit expressly declared, "The plaintiffs might have moved under Rule 60(b)(5), F.R.C.P., for relief from the prior judgment on the grounds that it 'is no longer equitable that the judgment should have prospective application.'" *Jackson v. DeSoto Parish School Bd.*, 585 F.2d 726, 730 n.1 (5th Cir. 1978). The Court observed that such a

---

[5] Certainly, such a motion would have been supported by the language of the 2002 judgment, which says that "the defendants shall use the congressional redistricting plan adopted by this court … until the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act."

procedure "would have allowed the judge to consider within a single action all issues relating to the DeSoto Parish apportionment plan," even though in ordinary redistricting cases "the court's jurisdiction is not continuing, and the plan, once adopted and acted upon, does not require further judicial supervision." *Id.* While perhaps not holding such a motion to be mandatory, the Court unquestionably indicated that such a motion would be permissible where the original trial court, like this one, had reserved continuing jurisdiction.

Neither of the District Court cases upon which General Hood relies holds to the contrary. Considering a subsequent challenge by a non-party to an earlier redistricting order, the three-judge District Court in *King v. State Bd. of Elections*, 979 F.Supp. 582 (N.D. Ill.), vacated on other grounds, 517 U.S. 899 (1996), observed that its predecessor "did not retain jurisdiction to hear and decide future constitutional challenges to its reapportionment order." 979 F.Supp. at 590. It therefore acted consistently with the *Jackson* footnote's allowance of a new complaint to challenge reapportionment judgments where "the court's jurisdiction is not continuing." *Id.*, quoting *Jackson*, 585 F.2d at 730 n.1. The District Court in *Perry-Bey v. City of Norfolk*, 678 F.Supp.2d 348 (E.D. Va. 2009), read *Jackson* and *King* exactly the same way. That Court explained:

> The *King* court therefore recognized, like *Jackson*, that election modification orders are not "institutional reform" orders that, *in and of themselves*, have prospective effect justifying continued court supervision. By defining the "acted upon" language from the *Jackson* opinion as "an election is held," the *King* court further clarified that, *absent language reserving jurisdiction*, the reach of the judgment ends once the first election is held implementing the new plan.

*Id.*, at 382 (emphasis added).

7

Here, the Republican Party is not arguing that this Court's judgment is one of those "'institutional reform' orders that, in and of themselves, have prospective effect." *Id*. This Court's jurisdiction continues, not because it issued a "institutional reform" order, but because it included "language reserving jurisdiction." *Id*. *Jackson*, *King*, and *Perry-Bey* all recognize that such language gives an order "prospective application" within the meaning of Rule 60(b)(5). That is why a motion to amend the final judgment under that Rule is in order.

Even if a separate action to displace this Court's 2002 final judgment might be permissible, *King* demonstrates the practical problems in adjudicating such a collateral attack. The three-judge panel in *King* concluded that it had to take judicial notice of the findings of fact of the three-judge panel in the prior action. 979 F.Supp. at 590. Then the new plaintiff bore the burden of demonstrating that the original court "either erred in making specific findings of fact or that the circumstances had changed … such that specific findings of fact were no longer valid and needed to be modified." *Id.*, at 591. The second court also "took judicial notice of the evidence presented to the original court." *Id.*, at 593. Because this panel already heard the evidence supporting its factual findings concerning Mississippi's redistricting policies, *Smith v. Clark,* 189 F.Supp.2d 529, 540-46 (S.D. Miss. 2002), there is no need to require a new panel to engage in such a complicated analysis. This Court can hear any new evidence it deems appropriate and proceed accordingly.

This Court's review of its own judgment does not mean that this action will "become the vehicle for all further voting rights challenges involving congressional redistricting in subsequent decades after subsequent censuses." Branch Response at 1. As soon as the Legislature adopts a new statute to replace § 25-15-1037, new plaintiffs can file a new action to challenge it. Until then, the Court that declared § 25-15-1037 unenforceable should remain in charge of the remedy.

### III. THIS COURT SHOULD MAKE THE PREPARATIONS NECESSARY TO AMEND ITS FINAL JUDGMENT IN A TIMELY FASHION.

The Republican Party agrees with General Hood that this Court "should provide a time table for resolution of the merits of the issues raised." Hood Response ¶ 11. Although the Republican Party sees no reason to delay the trial until after December 4, 2011, as General Hood requests, Hood Response ¶ 5, there is plenty of preparatory work that can be begun immediately. Certainly, as General Hood says, "the parties should be given the opportunity to submit briefing in evidence (including, but not limited to, redistricting plans for the Court's consideration)." Hood Response ¶ 11. The process of presenting briefs and proposed plans should be completed promptly, so that this Court may begin to receive evidence no later than the legislative deadline in December.

Moreover, this Court should immediately appoint its own expert pursuant to Fed.R.Evid. 706, as the Republican Party has requested. Motion ¶ 9. General Hood has not represented to this Court that the Standing Joint Congressional Redistricting Committee has even begun to work on a redistricting plan. The money that the State is not spending on hearings and expert analysis can be used to finance the appointment of a neutral expert to assist this Court with the preparation of an appropriate remedy.

Should the Legislature adopt a plan and secure federal approval under §5 of the Voting Rights Act before the qualifying date, this Court can finally dismiss the complaint, instead of entering an amended judgment. However, half a century of experience should have taught this Court to make prudent preparations. As Secretary Hosemann has explained, if Congressional primaries are not held in conjunction with the Presidential primary on March 13, 2012, a subsequent Congressional primary will cost the State $750,000.00. Secretary of State Response

at 3. To avoid such an unnecessary expenditure, this Court should instruct the parties to prepare for trial at an early date.

## CONCLUSION

For the reasons set forth herein and in the original motion of the Republican Party, together with the joinders filed by plaintiffs and Governor Barbour, this Court should grant the motion to amend the final judgment and establish procedures for trying necessary issues at the earliest possible date.

Respectfully submitted, this the 19th day of October, 2011.

                MISSISSIPPI REPUBLICAN PARTY
                EXECUTIVE COMMITTEE

        By:    /s/Michael B. Wallace_____
                MICHAEL B. WALLACE (MSB #6904)
                C. STEVENS SEALE (MSB #6688)
                JAMES FINDLEY (MSB #103649)
                WISE CARTER CHILD & CARAWAY
                Post Office Box 651
                Jackson MS  39201-0651
                (601) 968-5534

**CERTIFICATE OF SERVICE**

       I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent such notification of such filing to the following:

Hon. Jim Hood
Attorney General
Post Office Box 220
Jackson, MS  39205-0246

Robert Bruce McDuff, Esq.
Robert McDuff Law Office
767 N. Congress Street
Jackson, MS  39202-3009

John Griffin Jones
Jones Funderburg Sessums
Post Office Box 13960
Jackson, MS  39286-3960

Herbert Lee, Jr.
Lee & Assoc.
2311 W. Capitol Street
Jackson, MS  39209-4220

Arthur F. Jernigan, Jr.
Harris Jernigan & Geno
Post Office Box 3380
Ridgeland, MS  39158-3380

William Trey Jones, III
Joseph Anthony Sclafani
Matthew W. Allen
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, MS 39205

This, the 19th day of October, 2011.

                                                  s/Michael B. Wallace
                                                  MICHAEL B. WALLACE