ANALYSIS OF FACTORS CONSIDERED

Introduction

In drafting the plan, this Court considered many of the same factors that we considered when we drafted Mississippi's congressional redistricting plan ten years ago. During the past ten years, Mississippi's population grew from 2,844,658 to 2,967,297. That growth was not, however, consistent among the four congressional districts. The population of District 1 grew more than Districts 3 and 4, and District 2 lost population during the last ten years. In order to equalize the population among the districts, approximately 46,000 people had to be removed from District 1, 27,000 people had to be removed from Districts 3 and 4 (combined), and 73,000 people had to be moved into District 2. Notwithstanding the movement or potential movement of some 146,000 persons, we made as few changes as possible to the current districts. Some changes were inevitable, however. Yet, the core constituencies of each district were substantially preserved, as reflected in the attached Core Constituencies Report.

When the proposed map is compared to the 2002 Court Plan now in effect, the major changes are summarized as follows:

Panola, Yalobusha, and Grenada Counties were moved from District 1 to District 2. Leake County is no longer split between Districts 2 and 3, but the entire county is now in District 2. Winston and Webster Counties are no longer split between Districts 1 and 3, but they are entirely in District 1. We found it necessary to split Oktibbeha County between Districts 1 and 3. Jasper County is no longer split, but is now all in District 3. Marion and Jones Counties are no longer split, but are wholly in District 4. Finally, Clarke County had to be split between Districts 3 and 4. All of these changes were necessary in order to equalize the population among districts and to prevent retrogression in District 2, while maintaining the research universities in separate districts and not extending travel distance within the current elongated District 2.

Other minor changes were made in order to balance the population in Districts 2 and 3, and to avoid splitting municipalities other than the City of Jackson, which was already split under the 2002 Court Plan. These changes include moving the Gluckstadt precinct in Madison County from District 2 to District 3. This change was necessary to avoid dividing the City of Madison, which annexed a portion of that precinct after the 2002 Court Plan went into effect. Two precincts in northern Madison County (Cedar Grove and Ratliff's Ferry) were moved from District 3 to District 2, and several precincts in the downtown Jackson area in Hinds County were shifted from District 2 to District 3, which already had a presence in the City of Jackson.

Population Equality

The United States Constitution mandates a good-faith effort to ensure, as nearly as is practicable, that a State's congressional districts reflect equal population. This Court achieved substantial population equality while splitting only four of eighty-two counties and without splitting any precincts or any cities other than the City of Jackson, which had already been split under the 2002 Court Plan, with the approbation of the Mayor. The population deviation range is from +38 people in District 2 to -48 people in District 4. This slight deviation is de minimis, necessary, and acceptable in order to avoid dividing community interests, voter confusion and government expense that burdens the governments and the governed when counties and municipalities are split between congressional districts.

Majority-Minority District

The Voting Rights Act requires that one congressional district in Mississippi be maintained with an appropriate majority of African-American voting-age residents. This district is represented on the map as District 2. Under the 2002 Court Plan, African-Americans constituted 59.20% of the voting-

2

age population. District 2 under the 2002 Court Plan now has an African-American voting-age population of 63.3%. Under this Court's proposed plan, African-Americans constitute 61.36% of the voting-age population in District 2. This result prevents retrogression of the voting rights of African-American residents of District 2 under Section 5 of the Voting Rights Act.

Compactness

This Court has attempted to achieve, as nearly as possible, four compact districts. As we observed ten years ago, the ability to create compact districts is limited by the distribution of population and the need to prevent retrogression in District 2. Thus, sparsely populated districts necessarily will be geographically larger than heavily populated districts.

County and Municipal Boundaries

The proposed plan splits only four counties: Hinds, Madison, Oktibbeha, and Clarke. Eight counties were split under this Court's 2002 plan. We think this fact is a significant improvement over the former plan.

The large population in Hinds and Madison Counties, as well as the need to prevent retrogression in District 2, necessitated the splitting of those counties between Districts 2 and 3. Clarke County is split only because it is necessary to equalize the population between Districts 3 and 4. Oktibbeha County is split to equalize the population in District 1 and to maintain a major university in District 3. The only municipality that is split is the City of Jackson, which had already been split under the 2002 Plan. Ten years ago, Mayor Johnson testified that he preferred that the City of Jackson be represented by two congressmen. Because Jackson is the State's largest city, it would be difficult to devise a plan that does not split Jackson while at the same time respecting the one person, one vote principle and preventing retrogression in District 2.

Historical and Regional Interests

The plan preserves as much as possible, given the constraints of population equality and Section 5 of the Voting Rights Act, the cores of the Mississippi River/Delta region, East Central Mississippi, Southwest Mississippi, North Mississippi, and the Gulf Coast region.

Universities and Military Bases

The plan is drawn to continue to assure that the four major research universities are in separate districts. The military bases located in Lowndes, Lauderdale, and Harrison Counties remain in separate districts under this Court's plan.

Growth Areas

This Court has continued to make an effort to place the most rapidly growing areas of the State into separate districts as much as possible given the legal constraints that determine the configurations of each district.

Incumbent Residences

No incumbent would be required to move in order to run in the district in which he resides.

Distance of Travel Within District

The distances of travel within the districts are approximately the same as they were under this Court's 2002 Plan. The new District 2 is geographically larger, but this result is unavoidable in view of the population deficit in District 2, occurring over the last ten years that had to be accounted for by enlarging District 2.

## SUMMARY

This Court has attempted to apply all appropriate neutral factors that are recognized by the United States Supreme Court and federal redistricting courts, all of which we have noted above. We have tried to be particularly careful, first

to honor the principle that there can be no retrogression of the opportunity of minority voters to elect a representative of their choice. We have considered it a high priority not to split any precincts and to respect the counties as a unit of government and of the governed, and consequently to split only the absolute minimal number of counties and only to attain equal population and to protect minority rights. We have also given our best efforts in respecting the community of interests of each district, although we recognize we have been constrained by legal requirements from perfectly achieving this goal. We have also been mindful of the present constituencies who have become accustomed to their districts and their representatives, and the importance of established relationships. Finally, we have respected the other considerations we enunciated earlier in 2002 and today in this order.

    To the extent that any party is aggrieved, or to the extent that any party can contribute to a more satisfactory plan, such objections and comments are invited.