IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN ROBERT SMITH, SHIRLEY HALL
AND GENE WALKER

                              PLAINTIFFS

VS.                              Civil Action No. 3:01-cv-855-HTW-DCB

DELBERT HOSEMANN, Secretary of State of
Mississippi; JIM HOOD, Attorney General for the State of
Mississippi; HALEY BARBOUR,
Governor of the State of Mississippi; MISSISSIPPI
REPUBLICAN EXECUTIVE COMMITTEE; and
MISSISSIPPI DEMOCRATIC EXECUTIVE
COMMITTEE

                              DEFENDANTS

and

BEATRICE BRANCH, RIMS BARBER,
L.C. DORSEY, DAVID RULE,
JAMES WOODWARD, JOSEPH P. HUDSON,
and ROBERT NORVEL

                              INTERVENORS

**CONSOLIDATED WITH**

KELVIN BUCK, ET AL.

                              PLAINTIFFS

VS.                              Civil Action No. 3:11-cv-717 HTW-LRA

HALEY BARBOUR, ET AL.                         DEFENDANTS

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE**

---

1

The proposed intervenors respectfully submit this Memorandum of Law in support of their Motion to Intervene in this action originally filed by plaintiffs John Robert Smith, Shirley Hall, and Gene Walker against defendants Eric Clark, et al. Proposed Intervenors move pursuant to Federal Rule of Civil Procedure 24 to intervene as of right, or alternatively, by permission, to move this Court, pursuant to Federal Rule of Civil Procedure 60(b)(6), to amend its Final Judgment in this case. Proposed Intervenors do not seek to overturn any election results or to modify in any way the Court's congressional redistricting plan that it ordered the defendants in its Final Judgment to implement.

## PRELIMINARY STATEMENT

The Mississippi Constitution of 1890 afforded the people of Mississippi the right to participate in the legislative process of their government through initiative petitions. That constitutional right is now fatally impaired, if not lost. Through the intersection of this Court's injunction upholding the benefits of the Voting Rights Act of 1965 and the doctrine of "one-man one-vote", for Mississippi voters and the Mississippi Supreme Court's interpretation of article 15, section 273(3) of the Mississippi Constitution in *Initiative Measure No. 65: Butler vs. Watson*, No. 2020-IA-01199-SCT, __So.3d__, 2021 WL 1940821 (Miss. May 14, 2021) ("*Butler*")), the initiative petition rights of the people of Mississippi have been wrested from them. Left to a state legislature unable to adopt a constitutionally compliant redistricting plan for the last thirty years and that is equally unable to get an amended section 273 out of committee, despite at least six attempts from 2003 to 2015, the initiative petition rights of the people of Mississippi have been sideswiped and killed. The Proposed Intervenors' interest and the interest of the people of Mississippi in preserving and protecting their constitutional initiative petition

2

rights cannot be represented by the present parties to this lawsuit. Those parties do not speak for or represent the interest of the Proposed Intervenors or the people whose well-being and protection depend on the initiative process reserved by them and now taken from them.

## FACTUAL BACKGROUND

The facts and procedural history of this case are set out in the Court's previous orders and opinions. *See Smith v. Clark*, 189 F. Supp. 2d 503 (S.D. Miss. Jan. 15, 2002) [Doc. No. 34]; *Smith v. Clark*, 189 F. Supp. 2d 512 (S.D. Miss. Feb. 4, 2002) [Doc. No. 44]; *Smith vs. Clark*, 189 F. Supp. 2d 529 (S.D. Miss. Feb. 19, 2002) [Doc, No. 52]; *Smith v. Clark*, 189 F. Supp. 2d 548, 549 (S.D. Miss. Feb. 26, 2002) [Doc. No. 59]; *Smith vs. Hoseman,* 852 F. Supp. 2d 757 (S.D. Miss. Dec. 30, 2011) [Doc. No. 127. Briefly stated, on February 26, 2002, this Court entered a permanent injunction [Doc. No. 60] in this case that enjoined the use of Mississippi's then existing five-district congressional plan because the number of congressional representatives allotted to the state had been replaced from five to four because of the 2000 decennial census results. In its Order of February 4, 2002, the Court ordered its four-district court-drawn plan to be used in every succeeding congressional primary and general election for the State of Mississippi until the State produced a constitutional and precleared plan of its own. The Mississippi Legislature failed to produce such a plan and has failed to adopt a congressional redistricting plan since 1991.

In 2010, the federal government conducted its usual decennial census. The census indicated that the four districts in the court-drawn plan were malapportioned because of population shifts among the districts. After affording the parties ample time to produce a revised plan, on December 19, 2011 [Doc. No. 118], this Court filed its own revised proposed plan,

3

considering in its changes many of the same neutral factors it considered when it drafted Mississippi's congressional redistricting plan ten years earlier. No party objected to the proposed plan.

On December 30, 2011, acting under Rule 60(b)(5), the Court amended its February 26, 2002, permanent injunction [Doc. No. 128]. The Court ordered the congressional redistricting plan proposed in its December 19, 2011, Order to be implemented for conducting congressional and primary and general elections for the State of Mississippi until the state produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965. Notwithstanding the Court's injunction, Mississippi's five-district plan continues to exist as a matter of law, remaining codified at Miss. Code Ann. Section 23-15-1037. This statutory provision has not been amended or repealed. The Court retained jurisdiction to implement, enforce and amend its permanent injunction as shall be necessary and just.

On May 14, 2021, the Mississippi Supreme Court invalidated Mississippi voters' initiative petition rights. *See Butler*, 2021 WL 1940821. Article 15, Section 273(3) of the Mississippi Constitution provides as follows:

> The people reserve unto themselves the power to propose and enact constitutional amendments by initiative. An initiative to amend the Constitution may be proposed by a petition signed over a twelve-month period by qualified electors equal in number to at least twelve percent (12%) of the votes of all candidates for Governor in the last gubernatorial election. The signatures of the qualified electors from any congressional district shall not exceed one-fifth (1/5) of the total number of signatures required to qualify an initiative petition for placement upon the ballot. If an initiative petition contains signatures from a single congressional district which exceed one-fifth (1/5) of the total number of required signatures, the excess number of signatures from that congressional district shall not be considered by the Secretary of State in determining whether the petition qualifies for placement on the ballot.

Despite the Mississippi Supreme Court's finding that the initiative "system guaranteed that each congressional district would be equally a part of the process," *Butler*, 2021 WL 1940821 at *6, the Mississippi Supreme Court relied on the court-drawn plans of this federal court's three-judge panel and the associated line of cases to declare that the people of Mississippi (including the Proposed Intervenors) have lost their section 273(3) constitutionally embedded initiative petition rights. Id at *13. In effect, through its good-faith and federally mandated actions, this Court unknowingly and unintentionally accomplished what Mississippi's Constitution expressly prohibited its own Legislature from doing. Article 15, section 273 (15) of the state's Constitution expressly provides that the "Legislature ... shall in no way restrict or impair the provisions of this section or the powers herein reserved to the people."   Those powers include, without limitation, "the power to propose and enact constitutional amendments by initiative." Miss. Constitution, Art. 15, Section 273 (3).

The Proposed Intervenors include sponsors of the 10 day early voting Initiative Measure 78. By letter dated July 23, 2021, Mississippi Secretary of State Michael Watson informed Initiative Measure 78 sponsors of his inability to finally certify their petition even if they collected a proportional number of required certified signatures from Mississippi's congressional districts based on the intersection of this federal court's congressional redistricting plan and the Mississippi Supreme Court's Butler decision. *See* Letter from the Secretary of State to Rep. Hester Jackson-McCrary, dated July 23, 2021 ("Initiative Measure 78 Letter"), attached hereto as Exhibit A.

The haphazard loss of the initiative petition rights of the people of Mississippi is not a result this Court should accept as a necessary consequence of its preservation of equal voting

rights for the people of Mississippi where the Legislature has failed to act. A relatively simple modification by this Court to its injunction that does not affect the Court's existing redistricting plan will restore the lost initiative petition rights to the people of Mississippi. To preserve these rights and to avoid further prejudice and oppression to the voters and the people of Mississippi, the Proposed Intervenors seek to intervene in this action and file the attached Motion to Amend.

## ARGUMENT

I. The Proposed Intervenors Should Be Permitted to Intervene as of Right.

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit intervention on timely application by anyone: (1) who "claims an interest relating to the property or transaction that is the subject of the action," and (2) whose interest may be "impair[ed] or impede[d]" by disposition of the action, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). The rule "is to be construed liberally," with "doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F3d 244, 248 (5th Cir. 2009). "[I]ntervention of right must be measured by a practical rather than technical yardstick" and "should generally be allowed where no one would be hurt, and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citations and internal quotation marks omitted).

The Proposed Intervenors meet each of these requirements for intervention as of right.

1. *The Proposed Intervenors' Motion is Timely.*

This motion is timely. As the Fifth Circuit has recognized, determining whether a motion to intervene is timely requires a "contextual" analysis, and "absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). The key question is whether the timing of the intervenor's Motion prejudices the original parties to the proceeding.

6

*Id*. Thus, "[f]ederal courts should allow intervention 'where no one would be hurt, and greater justice could be attained.'" *Id. (Quoting McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970); *Ross*, 426 F.3d at 754 (permitting intervention after a district court judgment "provided that the rights of existing parties were not prejudiced, and intervention did not interfere with the orderly processes of the court").

This permissive standard has led the Fifth Circuit to adopt a contextual four-factor test for timeliness of intervention in the district court. Under that test, a court should consider (1) "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of its interest" before it sought to intervene; (2) "the extent of the prejudice that the existing parties" may suffer due to the "intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest"; (3) "the extent of the prejudice that the would-be intervenor may suffer if intervention is denied"; and (4) "the existence of unusual circumstances militating either for or against a determination that the application is timely." *Espy*, 18 F.3d at 1205; *see Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). "A Motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). In this case, all four factors strongly militate in favor of permitting intervention.

First, the Proposed Intervenors moved to intervene promptly after the Mississippi Supreme Court's May 14, 2021, *Butler* decision invalidating section 273(3) and the receipt of the Secretary of State's Initiative Measure 78 Letter. Prior to such time, initiative petitions were certified by the Secretary of State and adopted or defeated by Mississippi voters based on the Secretary of State's interpretation of section 273(3) and the Mississippi Attorney General's Opinion, No. 2009-00001, 2009 WL 367638, at **1,3 (Jan. 9, 2009) that:

7

> the geographic distribution requirement of Section 273 requires that not more than 20% of the total required number of initiative petition signatures must come from the last five-district congressional district pan which was is [sic] effect prior to the adoption of the current four-district plan…. It would be mathematically impossible to satisfy the requirements of Section 273 using just four districts.

Thus, before the Mississippi Supreme Court's *Butler* decision and the Secretary of State's acceptance of it in the Secretary of State's Initiative Measure 78 Letter, the Proposed Intervenors' section 273 interest in this case did not exist, nor could it have, and they had no interests to assert. They moved to intervene in this action not only as soon as they knew of their interest in the case but also as soon as those interests came into being.

Second, no prejudice to the Court nor the existing parties will result from the proposed intervention at this time. As to the Court, the proposed intervention will provide the Court with the opportunity to correct the unanticipated impact on and injustice to the constitutional initiative rights of the people of Mississippi (including, without limitation, the Proposed Intervenors) resulting from its Final Judgment and its necessary assumption of a redistricting task entrusted to a Legislature concurrently charged with protecting the Proposed Intervenors' initiative rights. As to the existing parties, such parties' concerns over Mississippi's congressional redistricting plan have been fully and finally adjudicated. The Proposed Intervenors intend to move this Court to amend its injunction solely to insulate the section 273 rights of the people of Mississippi, not to modify the court-drawn redistricting plan the existing parties must use. The Court has found an absence of prejudice when district courts allowed intervention even after judgment was entered where, as here, the only "inconveniences ... [were] those commonly associated with defending a ruling or judgment on appeal and would have arisen regardless of whether [the intervenor]

sought to intervene before the district court entered its amended judgment." *Ross*, 426 F.3d at 756; *see, e.g., Stallworth*, 558 F.2d at 267; *Wal-Mart Stores*, 834 F.3d at 565-66.

Third, both the Proposed Intervenors and the public at large will suffer if intervention is denied. Without intervention, given the Legislature's inability to adopt a congressional districting plan for thirty years and its equal inability over the last eighteen years to make "any serious attempt to amend section 273 to conform to the new reality" of four districts, *see Butler*, 2021 WL 1940821 at *6, the initiative process for the people of Mississippi, including the Proposed Intervenors, will likely be forever lost. That these two legislative failures of government have and will be inextricably bound together is now a glaring reality for the public, as it should be for this Court whose injunctive relief was needed to provide a fair and just redistricting plan for Mississippians. The public must hear this Court affirm that it would not knowingly and judicially balance the people's initiative petition rights against a court-drawn redistricting plan without adequate fair accommodation for the resulting lost initiative rights if it had been alerted by the existing parties to the issue in the first place. Therefore, it is important that the Proposed Intervenors be permitted to intervene to protect their own interests and those of the people of Mississippi, to further the fair administration of justice, and to assure the public that this Court impartially factored the forfeiture of Mississippi's initiative petition rights into its redistricting remedy.

Finally, the Fifth Circuit has explained that, even if a Court determines that an intervenor failed to promptly seek intervention, that entity may nevertheless demonstrate timeliness by providing "convincing justifications[s] ... that for reasons other than lack of knowledge he was unable to intervene sooner." *Stallworth*, 558 F.2d at 266. Courts should permit intervention "where no one would be hurt and the greater justice could be attained." *Espy*, 18 F.3d at 1205.

9

For the reasons explained above, the Proposed Intervenors did promptly intervene here. But to the extent this Court disagrees, the Legislature's inability to adopt a precleared redistricting plan while protecting the people's initiative rights, and the effect of allowing this Court to draw such a plan for the Legislature without also ensuring the Court does not, by its actions, unintentionally impair the people's initiative rights, provide the requisite "convincing justification" to render the motion timely.

2. <u>The Proposed Intervenors have a Substantial Legal Interest in the Subject Matter of this Case</u>.

A substantial legal interest is "an interest that is concrete, personalized, and legally protectable." *Texas v. US*, 805 F.3d 653, 658 (5th Cir. 2015). The interest need not be "an enforceable legal entitlement," and an individual or entity may intervene even absent "standing to pursue [their] own claim." Id. At 659. The Fifth Circuit applies a non-stringent, "practical [approach] to disposing of lawsuits by involving as many apparently concerned person as is compatible with efficiency and due process." *Ross*, 426 F.3d at 757 (internal citations and quotation marks omitted). Here, Proposed Intervenors easily clear this threshold.

The Proposed Intervenors are qualified voters in Mississippi. They are exercising their reserved section 273 Constitutional initiative rights through the filing of Initiative Measure 78. As a constitutional interest expressly reserved to them, those rights constitute a substantial legal interest. Though likely unknown by the Court at the time, the Final Judgment unfairly impacts the Proposed Intervenors' substantial legal interests, giving them a direct interest and stake in the subject matter of this case.

By addressing in isolation the legal issue necessitating a redrawn redistricting plan for Mississippi, the Court inadvertently created a second serious legal issue for the people of

Mississippi-–as evidenced by the voiding of Initiative Measure 65 despite its overwhelming voter support at the ballot. Stated another way, if the Final Judgment's remedy compelled Mississippi to use the court-drawn redistricting plan for voting and to use the still existing five district codified State plan for initiatives until such time as the Legislature resolved the conflict between the two, Initiative Measure 65 would now be law in Mississippi and early voting Initiative Measure 78 would have a chance of appearing on Mississippi voters' ballot. Such an approach would not have affected the federally imposed state redistricting plan and would have preserved the people's Section 273 constitutional rights pending the Legislature's resolution of the conflict so as to "in no way restrict or impair the ... powers herein reserved to the people." Miss. Constitution, Art. 15, Section 273(13).

     The Proposed Intervenors are requesting the Court to adopt this or a similar approach in their Rule 60(b)(6) Motion. Without it, the Proposed Intervenors and Mississippi voters will have lost their initiative constitutional right and the state Legislature, locked in multi-decade dysfunctional inaction, would have been unintentionally relieved of its duty to not be the source of the restriction or impairment of the people's substantial legal right to propose and enact constitutional amendments by initiative. This is precisely the sort of "concrete, personalized interest" that suffices for intervention as of right, even absent a "legal entitlement" or Article III standing. *Texas*, 805 F.3d at 660; *See also Brumfield v. Dodd*, 749 F.3d at 339, 344 (5th Cir. 2014) (stating that the "interest requirement may be judged by a more lenient standard if the case involves a public interest question...." (Internal quotation marks omitted)). Because the alternative to intervention is a separate action by the Proposed Intervenors, the efficiency goals implicit in Rule 24 are furthered by intervention.

     3.    <u>Intervention in this Case is Necessary to Protect the Proposed Intervenors'</u>

Interest.

Proposed Intervenors also meet the "minimal" burden to show that the disposition of the action may impair their ability to protect their interests. Proposed Intervenors need not wait for some prospective or reasonably foreseeable event to demonstrate that the disposition of the action *may* impair or impede their ability to protect their interests. The Mississippi Supreme Court's *Butler* decision, coupled with the Secretary of State's Initiative Measure 78 Letter, establishes the impairment through the declaration that section 273 is "unworkable." *Butler*, 2021 WL 1940821 at *10.

Importantly, as will be detailed in Proposed Intervenors' Motion to Amend Final Judgment, the Proposed Intervenors are not asking this Court to dispute or otherwise rule on the Butler decision, including, without limitation, the Mississippi Supreme Court's interpretation of its own Constitution. That Court's interpretation that "the plain language of section 273 ties the congressional districts mentioned therein to the actual, existing congressional districts" still holds. *Butler*, 2021 WL 1940821 at *7. Nor will the Proposed Intervenors request this Court to take any action with respect to past or future elections or revise in any way its court-drawn adopted redistricting plan. Rather, the Proposed Intervenors seek solely to protect their and the people's state constitutional initiative interests, something the existing parties appear indifferent to. This can be done without creating a conflict between this Court and the Mississippi Supreme Court or making any change to the redistricting plan. Simply stated, this can be done by the Court's acknowledgment that its authority to ensure Mississippi's compliance with the Voting Rights Act of 1965, due to the Legislature's failure to act, cannot be used as an instrument to deprive the people of Mississippi of their constitutionally embedded initiative rights or to allow the Legislature to avoid its constitutional duty not to impair or impede Mississippians' reserved

12

initiative rights.

This proposed modification does not make the Mississippi Supreme Court's *Butler* decision wrong as to its interpretation of "congressional district" or the "fluid nature of congressional representation" as it relates to its interpretation of its own Constitution. See *Butler*, 2021 WL 1940821 at *8. It removes this Court's federally imposed redistricting plan and at large elections as a legal predicate for invalidating the people's section 273 Constitutional rights and empowers the Legislature to do its reapportionment and initiative right protection job. Intervention in this case is necessary to safeguard the Proposed Intervenors' interests and those of the public.

4. The Existing Parties Cannot Represent or Protect the Proposed Intervenors' Interests.

Finally, the Proposed Intervenors' interests are inadequately represented by existing parties. Fed. R. Civ. P. 24(1(2). A proposed intervenor need not show that the representation *will be* inadequate. *Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A*, 817 D. 3d 198, 203 (5th Cir. 2016). All that is required is the "minimal" burden of showing the representation "may be" inadequate. *Tribovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972).

The existing parties have focused on the drafting and adoption of the congressional redistricting plan for the State of Mississippi. They appear not to have advised the Court of the direct connection between Mississippi's congressional redistricting plan and the peoples' reserved initiative rights despite each having knowledge of the connection. As noted in the Mississippi Supreme Court's *Butler* decision, with respect to the Mississippi Republican and Democratic Executive Committees, from "2003 to 2015, at least six attempts were made by individual legislators to amend section 273 to reflect the new reality of four congressional district

13

[sic]. None made it out of committee." *Butler*, 2021 WL 199408281 at *6 n.2.   As to the Mississippi Governor, the Mississippi Attorney General, and the Mississippi Secretary of State, each knew of the 2009 opinion from the Mississippi Attorney General suggesting a remedy for the connection between a redistricting plan and section 273(3). Mississippi Attorney General Opinion, No. 2009-00001, 2009 WL 367638, at **1,3.   The existing parties have ignored the reality of the issue before this Court. The Proposed Intervenors have no reason to believe that they will move to protect their interests. The Proposed Intervenors' interest in this case is not adequately represented by the existing parties.

    II.  <u>The Proposed Intervenors Also Meet the Requirement for Permissive Intervention.</u>

Permissive Intervention is also warranted under Rule 24(b)(1)(B). That Rule permits intervention on a timely motion of anyone who "has a claim or defense that shares with the main action a common question of law or fact."   This requirement is subject to a liberal construction. *See Stallworth,* 558 F.2d at 269. "In exercising its discretion," a court "must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights."   Fed. R. Civ. P. 24(b)(3).

For the reasons set out above, the instant request for permissive intervention is timely. *See supra* at I (1). The only remaining requirement is the presence of a common question of law or fact between the existing claims and the issues raised by the Proposed Intervenors. The Proposed Intervenors' Motion to Intervene, together with the proposed Motion to Amend, demonstrate the common questions of law and fact between the claims raised by the Proposed Intervenors and those already at issue in this case. The loss of section 273 initiative rights stems from facts and law common in this case, including the existing parties' apparent indifference to those shared law and facts. As a result, permissive intervention is appropriate and should be

granted, as it would "further the interests of justice, the rights of the parties, and efficient judicial administration."  *New Orleans Pub. Serv., Inc. V. United Gas Pipe Line Co.*, 690 F.2d 1203, 1215 (5th Cir. 1982).

## CONCLUSION

For the reasons set out above, the Proposed Intervenors respectfully request that the Court grant the Proposed Intervenors' Motion to Intervene and permit the Proposed Intervenors to file the attached Motion to Amend.

Respectfully Submitted, this the 5th day of November, 2021.

By:   /s/ Wilbur O. Colom
      WILBUR O. COLOM (MSB #6403)
      COLOM AND BRANT LLC
      Post Office Box 101
      Columbus, MS 39703
      662-327-0903

By:   /s/ Aphrodite Kavyas McCarthy
      APHRODITE KAVYAS MCCARTHY (MSB#100353)
      Post Office Box 444
      Pass Christian, MS 39571
      228-452-9943

CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Cour using the ECF system which sent notification of such filing to the following registered users:

Arthur F. Jernigan, Jr., Esq. (ajernigan@jcalawfirm.com)

Herbert Lee, Jr, Esq. (lass2311@aol.com)

Jack L. Wilson, Esq. (Ciwilson@babc.com)

John G. Jones, Esq. (john@griffinjoneslaw.com)

Justin L. Matheny, Esq. Cimath@ago.state.ms.us)

Michael B. Wallace, Esq. (mbw@wisecarter.com)

Robert B. McDuff, Esq. rbm@mcdufflaw.com)

Samuel E. Scott, Esq. (sscott@msfb.com)

Samuel L. Begley, Esq. (sbegley1@bellsouth.net)

Stephen Lee Thomas, Esq. (sthomas@bradley.com)

T. Hunt Cole, Jr, Esq. (hunt4246@att.net)

Willam Trey E. Jones, III, Esq. (tjones@bruini.com)

Ellie Turnage, Esq. (ellieft@hotmail.com)

John L. Walker, Jr., Esq. (jwalker@walkergrouppc.com)

Michael B. Wallace, Esq. (mbw@wisecarter.com)

Margaret Oertling Cupples, Esq. (mcupples@bradley.com)

                                          s/s Aphrodite Kavyas McCarthy
                                          APHRODITE KAVYAS MCCARTHY