IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**JOHN ROBERT SMITH, ET AL.**                                                    **PLAINTIFFS**

**VS.**                     **CIVIL ACTION NO. 3:01cv855-HTW-EGJ-DCB**

**ERIC CLARK, Secretary of State of Mississippi;**
**ET AL.**                                                                         **DEFENDANTS**

Consolidated with

**KELVIN BUCK, ET AL.**                                                       **PLAINTIFFS**

**VS.**

**HALEY BARBOUR, in his official capacity as**
**Governor of the State of Mississippi, ET AL.**               **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES SUPPORTING**
**THE GOVERNOR'S AND THE ATTORNEY GENERAL'S**
**RESPONSE TO MOTION TO INTERVENE**

---

**INTRODUCTION**

Before would-be intervenors can inject a new claim for relief into a federal case, they must prove their Article III standing. In 2001, when Mississippi's congressional seat allotment was reduced from five to four, the plaintiffs filed this case to ensure that the State's future congressional elections comported with federal law. This Court crafted a four-district plan after the Mississippi Legislature failed to draw the lines. That history repeated itself in 2011. So, for over twenty years, this case has been about how to divide the State's congressional districts—not how many we have for purposes of interpreting the Mississippi Constitution.

1

Meanwhile, in May 2021, the Mississippi Supreme Court held that the citizen-initiative process for amending the state constitution is "broken." The court determined that the process requires five "congressional districts" to function, not four "congressional districts," and that federal apportionment law dictates that the State currently has four. Along the way, the court also determined that the orders in this case, and the old five districts that this Court's four-district plans supplanted, had no bearing on its analysis.

Now, several months after their failed attempt to intervene in the Mississippi Supreme Court action, an initiative group has asked to intervene in this case. The proposed intervenors want to press a new claim for modifications of this Court's prior orders that they believe would rebut the Mississippi Supreme Court's interpretation of the state constitution. But the proposed intervenors have not been injured by any actions or inactions of the parties to this case. And the proposed intervenors' requested modifications of this Court's orders will not redress their state-law problem. The proposed intervenors thus lack Article III standing to intervene here. For that basic reason, and because the proposed intervenors have also failed to satisfy Rule 24's many other requirements, this Court should deny intervention.

## FACTS

### *This Court's Current Four-District Congressional Plan*

After "the 2000 Decennial Census, the number of congressional representatives allotted to the State of Mississippi" was "reduced from five to four." *Smith v. Clark*, 189 F. Supp. 2d 503, 505 (S.D. Miss. 2002). The Mississippi

Legislature subsequently failed to enact a four-district plan. *Id.* In late 2001, the original plaintiffs sued the defendants (the Governor, the Attorney General, the Secretary of State, and the State's two largest political parties), alleging that the then-current "districting plan dividing the State into five congressional districts"—codified at Mississippi Code Section 23-15-1037—could not "be enforced under federal law" and any new plan could not "be enforced until it has been precleared under § 5 of the Voting Rights Act." *Id.* The plaintiffs asked this Court "to enjoin enforcement of the [then-]current congressional district plan" and require that "congressional representatives be chosen by the electors … at-large" or that this Court "adopt a new congressional redistricting plan." *Id.* A few months later, this Court adopted a four-district plan, prohibited the defendants "from implementing the former five-district congressional redistricting plan," and required the defendants to "implement" this Court's plan in 2002 and "all succeeding" congressional elections. *Smith v. Clark*, 189 F. Supp. 2d 548, 559 (S.D. Miss. 2002).

In late 2011, the Legislature had again failed to redistrict following the 2010 Decennial Census. *Smith v. Hosemann*, 852 F. Supp. 2d 757, 760 (S.D. Miss. 2011). The "results of the census" did not alter the State's "number of congressional districts," but the four then-existing, court-established districts were "malapportioned because of population shifts among the districts." *Id.* This Court thus amended its prior judgment, drew a new four-district plan, and ordered the defendants to use that plan in 2012 and "all succeeding" congressional elections. *Id.* at 767.

The State's past five congressional elections have utilized this Court's current four-district plan. The Legislature has not (at present) enacted a plan that supplants that four-district plan. As of this writing, nor has the Legislature repealed Code Section 23-15-1037's five-district plan.

### *The Initiative Measure No. 65 Litigation*

The Mississippi Constitution provides a process for the enactment of constitutional amendments through initiative petitions. A petition must be supported by signatures of qualified electors equal to twelve percent of votes cast in the preceding gubernatorial election. Miss. Const., art. 15, § 273(3). Further, "the signatures of the qualified electors from any congressional district shall not exceed one-fifth (1/5) of the total number of signatures required to qualify an initiative petition for placement upon the ballot." *Id*.

In 2019, initiative sponsors submitted a petition for Initiative Measure No. 65, which would have constitutionalized a state-regulated medical-marijuana program. A few days before the November 2020 general election, two challengers sued the Secretary of State in the Mississippi Supreme Court over the "sufficiency" of Measure 65's signature petition. *In re: Initiative Measure No. 65*, --- So. 3d ---, 2021 WL 1940821, at *3 (Miss. May 14, 2021). The challengers argued that the petition violated Section 273(3)'s one-fifth signature requirement. *Id.*, at *2. In their view, meeting that requirement was (and is) impossible because "the reduction in Mississippi's congressional districts from five to four" after the 2000 census "broke section 273 such that it must be amended to function again." *Id.*

On May 14, 2021, the Mississippi Supreme Court sided with the challengers. *Id.*, at *1. The court held that Measure 65's petition failed to satisfy Section 273(3) because the State only elects four congressional representatives. *Id.*, at *5-8. The court determined that, as a matter of state law, Section 273(3)'s term "congressional district" means "a division of a state that elects a member of the United States House of Representatives." *Id.*, at *7. The provision's five-district-based requirement cannot be met since there are "only four areas in the state" that currently "meet that definition" of "congressional district" and "Mississippi only elects four congressional representatives." *Id.* The court added that no person or entity was to blame: only four "congressional districts" currently exist because "the application of the [federal] Permanent Reapportionment Act of 1929" reduced Mississippi's congressional seat allotment from "five seats to four seats" in 2000. *Id.*

To reach its conclusions, the Mississippi Supreme Court rejected the proposition that this Court's final judgment, which prohibits using Mississippi Code Section 23-15-1037's five-district plan to elect congressmen, has any bearing on the initiative process. *Id.*, at *10-12. The court instead relied solely on "the wording of Section 273(3) and the undeniable reality that Mississippi elects its congressmen from four congressional districts." *Id.*, at *10. This Court's injunction, which "defines Mississippi's four congressional districts for purposes of electing representatives," was irrelevant. *Id.* Moreover, the Mississippi Supreme Court determined that, "by operation of state law itself," Code Section 23-15-1037's five-district plan "no longer establishes Mississippi's congressional districts." *Id.*

5

The "Mississippi Early Voting Initiative 78" and another petition's sponsor reacted to the Mississippi Supreme Court's decision by moving to intervene to seek rehearing. *See* Exs. 1 & 2 to Response. The movants contended that the Mississippi Supreme Court "wrongly decided" the case. Ex. 1 to Response at 4. The movants also asserted that the decision "threaten[ed] to invalidate MEVI78's own ballot initiative," and that the court "unconstitutionally disenfranchised" the legislators and electors who enacted Section 273 and subsequent ballot initiatives. Ex. 1 to Response at 4. In their proffered rehearing motion, among other things, the movants argued that the Mississippi Supreme Court: must "defer" to the Secretary of State's interpretation of Section 273(3); was "legislating from the bench"; could not "retroactively" invalidate Measure 65; and "lack[ed] the authority to strike down any provision of the Constitution." Ex. 2 to Response at 6-12. In an unpublished order without dissent, the court rejected the request to intervene. *See* Ex. 3 to Response.

### *The Proposed Intervenors' Motion to Intervene in this Case*

Several months after intervention at the Mississippi Supreme Court failed, the Mississippi Early Voting Initiative and that initiative's sponsors, Hester Jackson McCrary and Kelly Jacobs, moved to intervene in this lawsuit. Dkt. 133. The proposed intervenors seek intervention "as plaintiffs for the sole purpose of moving this Court, pursuant to Federal Rule of Civil Procedure 60(b)(6), to amend" its prior orders. Dkt. 133 at 2. Their asserted bases for "intervention and proposed amendment" include "that the application of this Court's [orders] substantially contributed to voiding Mississippi voters' initiative petition rights" under Section 273. Dkt. 133 at 2. The

6

proposed intervenors attached a Rule 60(b)(6) motion to their intervention papers. *See* Dkt. 134-2. The attachment violates Rule 24(c) and fails to explain why this Court should grant any relief. *See* Fed. R. Civ. P. 24(c) (motions to intervene "must … be accompanied by a pleading that sets out the claim or defense for which intervention is sought"). The attachment instead demands that this Court "clarify" that its prior orders: "only addressed the conduct of congressional elections to meet the requirements of federal law"; "did not change the five congressional districts for any purpose beyond the conduct of federal elections…specifically, [the judgment] did not abolish the five districts existing on February 26, 2002, or on December 30, 2011"; and "did not void any provision of Mississippi Constitution Section 273." Dkt. 134-2 at 2.

## ARGUMENT

### *The Proposed Intervenors Lack Article III Standing*

The proposed intervenors seek to intervene "as plaintiffs." Dkt. 133 at 2. They "do not seek to overturn any election results or to modify in any way" this Court's "redistricting plan that it ordered the defendants … to implement." Dkt. 134 at 2. Rather, the proposed intervenors want relief that will allegedly "clarify" what this Court's prior orders mean. Dkt. 134-2 at 2. They lack Article III to seek that relief.

Would-be intervenors must establish their own "Article III standing" when they intend to "pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *see also Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.

Ct. 2367, 2379 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader or different from the party invoking a court's jurisdiction."); *Banks v. St. James Parish Sch. Bd.*, 757 F. App'x 326, 333 (5th Cir. 2018) (Jolly, J., partially concurring) (an intervenor seeking relief that has "no relationship to the relief sought by" the original plaintiffs "cannot seek relief without first establishing standing"). None of the existing parties in this case has sought the relief that the proposed intervenors want. The proposed intervenors therefore must prove their own Article III standing before they can intervene.

Article III requires proof of "injury in fact, causation, and redressability." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014). That showing must be made as to "each claim [a proposed intervenor] seeks to press" and to "each form of relief that is sought." *Town of Chester*, 137 S. Ct. at 1650 (internal quotes omitted). A "[f]ailure to establish any one" of the three elements "deprives the federal courts of jurisdiction" to hear the claim. *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002).

The proposed intervenors contend that this Court's prior orders impaired their "initiative petition rights" under the Mississippi Constitution. Dkt. 133 at 2; *see* Dkt. 134 at 5, 8, 10-11. That is a dubious assertion. And, as the Mississippi Republican Executive Committee has explained, the proposed intervenors' injury theory does not establish an interest that justifies Rule 24 intervention. In any event, for purposes of standing, this Court can assume that a claimed impairment of the proposed intervenors' initiative-petition rights identifies an Article III "injury in fact." Even

under that assumption, there is no "causation" or "redressability" to bolster the proposed intervenors' standing.

As to causation, an Article III "injury in fact" must be "fairly traceable to the challenged conduct of the defendant." *Cameron Cty. Housing Auth. v. City of Port Isabel*, 997 F.3d 619, 622 (5th Cir. 2021). The proposed intervenors must show "a causal connection between the injury and the conduct" of which they complain. *Id.* at 623 (internal quotes omitted). That "connection is lacking where the challenged action of the defendant" is "the result of the independent action of some third party not before the court." *Id.* (internal quotes omitted).

The proposed intervenors' claim flunks the causation test. They cannot explain how anybody in this lawsuit has allegedly "sideswiped and killed" their state "constitutional right" to propose initiatives. Dkt. 134 at 2. The proposed intervenors instead blame their injury on the actions or inactions of this Court, the Mississippi Supreme Court, and/or the Mississippi Legislature. Dkt. 133 at 2; *see* Dkt. 134 at 2-6. In their own words, the proposed intervenors' initiative petition rights are "now fatally impaired, if not lost" because of "the intersection of this Court's injunction," "the Mississippi Supreme Court's interpretation" of Section 273, and the Legislature's failure "to adopt a constitutionally compliant redistricting plan for the last thirty years" or "get an amended section 273 out of committee." Dkt. 134 at 2. The alleged source of the proposed intervenors' claimed injury, by definition, consists of the "independent action[s] of some third party not before the court." *Cameron Cty. Housing Auth.*, 997 F.3d at 623.

Moreover, the truth is that the culprits who the proposed intervenors have identified never caused them any harm. No initiative petition can currently satisfy the state constitution's signature requirements, according to the final arbiter of Mississippi law, because "only four areas in the state" presently "meet" the "definition" of "congressional district." *In re: Initiative Measure No. 65*, --- So. 3d ---, 2021 WL 1940821, at *7. That was caused by "the application of the [federal] Permanent Reapportionment Act of 1929" which reduced the State's allocated congressional seats from "five seats to four seats" in 2000. *Id.* Federal law—not the conduct of this Court, any party, or some non-party to this case—caused the proposed intervenors' alleged injury. That fails to sustain their standing.

On the redressability front, the proposed intervenors' argument fares no better. The proposed intervenors must establish "a likelihood" that their "requested relief will redress" their "alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). The proposed intervenors want this Court "to clarify" that its prior orders: (1) "only addressed" conducting congressional elections "to meet the requirements of federal law"; (2) "did not change" the five congressional districts existing in 2002 "for any purpose beyond the conduct of federal elections"; (3) "did not abolish" those five districts; and (4) "did not void" Section 273. Dkt. 134-2. The proposed intervenors speculate that those clarifications "will restore the lost initiative petition rights" of "the people of Mississippi" by influencing some unidentified tribunal to adopt their view of the state constitution's initiative process. Dkt. 134 at 6. Article III's requirements can be satisfied "based on the discretionary

10

choice of a third-party," but the proposed intervenors must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *El Paso County, Texas v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020) (internal quotes omitted). The proposed intervenors have made no such showing that modifications to this Court's orders would force some other court to adopt the proposed intervenors' reading of the Mississippi Constitution.

It is not "*likely*, as opposed to merely *speculative*," that the proposed intervenors' alleged "injury will be addressed by a favorable decision." *Inclusive Communities Project, Inc. v. Dept. of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (emphasis in original, internal quotes omitted). The court with the final authority to interpret Section 273(3) has already rejected the arguments that the proposed intervenors hope to distill from their proffered Rule 60 relief. This Court's orders were irrelevant to *In re: Initiative Measure No. 65*'s holding and result. *See In re: Initiative Measure No. 65*, --- So. 3d ---, 2021 WL 1940821, at *10 ("we base our holding on the wording of Section 273(3) and the undeniable reality that Mississippi elects its congressmen from four congressional districts"). The Mississippi Supreme Court held that Section 273(3)'s signature requirements cannot be satisfied—and therefore "any foray into the effects of a statute purporting to draw five congressional districts is unnecessary." *Id*. The court further emphasized that Code Section 23-15-1037 "cannot trump" what Section 273(3) means. *Id*. Then the court held that, "by operation of state law," a five-district plan "no longer establishes Mississippi's congressional districts"

and thus cannot define the districts that must be used to satisfy Section 273(3)'s requirements. *Id.*

In short, granting the proposed intervenors' proffered modifications to this Court's prior orders would not make Code Section 23-15-1037's five-district plan relevant or fix the state constitution's initiative process. The Mississippi Supreme Court held that the process is currently broken based on "the wording" of Section 273(3) and "the undeniable reality" that our State "elects its congressmen from four congressional districts." *Id.* This Court cannot issue a remedy that changes Section 273(3)'s "wording" or alters "undeniable reality." The "very essence" of Article III "redressability" is that "[r]elief that does not remedy the injury suffered" cannot sustain the proposed intervenors' standing. *Steel Co.*, 523 U.S. at 107. The proposed intervenors' claim for relief simply lacks the "causation" and "redressability" necessary to allow them to intervene.

### *The Proposed Intervenors Failed to Satisfy Rule 24*

The Secretary of State and the Mississippi Republican Party Executive Committee have fully explained why the proposed intervenors cannot intervene as of right under Rule 24(a) and permissive intervention under Rule 24(b) would be inappropriate. The Governor and the Attorney General thus adopt those arguments and incorporate them here by reference as additional grounds to deny the proposed intervenors' motion, should this Court determine they have Article III standing to intervene.

**CONCLUSION**

This Court should enter an order denying the proposed intervenors' motion to intervene [Dkt. 133].

Dated: November 22, 2021

                                              Respectfully submitted,

                                              LYNN FITCH
                                                Attorney General

By:   <u>/s/ Justin L. Matheny</u>
        Justin L. Matheny (Bar No. 100754)
          Deputy Solicitor General
        MISSISSIPPI ATTORNEY GENERAL'S OFFICE
        P.O. Box 220
        Jackson, MS 39205-0220
        Telephone: (601) 359-3680
        justin.matheny@ago.ms.gov

        *Counsel for Defendants*
        *Governor Tate Reeves and*
        *Attorney General Lynn Fitch*