IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN ROBERT SMITH, SHIRLEY HALL
AND GENE WALKER                                                                           PLAINTIFFS

VS.                                                        Civil Action No. 3:01-cv-855-HTW-DCB

DELBERT HOSEMANN, Secretary of State of
Mississippi; JIM HOOD, Attorney General for the State of
Mississippi; HALEY BARBOUR,
Governor of the State of Mississippi; MISSISSIPPI
REPUBLICAN EXECUTIVE COMMITTEE; and
MISSISSIPPI DEMOCRATIC EXECUTIVE
COMMITTEE                                                                                 DEFENDANTS

and

BEATRICE BRANCH, RIMS BARBER,
L.C. DORSEY, DAVID RULE,
JAMES WOODWARD, JOSEPH P. HUDSON,
and ROBERT NORVEL
INTERVENORS

CONSOLIDATED WITH

KELVIN BUCK, ET AL.                                                                       PLAINTIFFS

VS.                                                        Civil Action No. 3:11-cv-717-HTW-LRA

HALEY BARBOUR, ET AL.                                                                     DEFENDANTS

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF
## MOTION TO VACATE INJUNCTION AND FOR OTHER RELIEF

### INTRODUCTION

The Mississippi Republican Executive Committee ("Republican Party") has from the outset been a defendant in both of these consolidated cases concerning the establishment of districts for the election of Mississippi's delegation to the United States House of Representatives. The 2000 census resulted in a reduction in the size of the delegation from five Members to four Members, but the Mississippi Legislature never adopted a redistricting plan to replace the old five-district plan in Miss. Code Ann. § 23-15-1037. This Court therefore devised its own four-district plan and ordered the Republican Party and the other defendants to conduct Congressional elections according to that plan "until the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." [Dkt. #60 at 2]. The Legislature again took no action after the 2010 census, and the Court amended its injunction to take the new population data into account; once again, it would remain in effect until the Legislature adopted a valid plan. [Dkt. #128 at 2].

Population changes disclosed by the 2020 census have now rendered this Court's current redistricting plan malapportioned. Ten years ago, this Court recognized its authority to terminate an injunction that had become unconstitutional. [Dkt. #127 at 11-12]. The Republican Party has moved, pursuant to Fed. R. Civ. 60(b)(5), that this Court establish a schedule and procedure to determine whether and how to exercise that authority. Otherwise, all defendants will remain bound by the current injunction.

In addition, the Legislature has for the first time adopted a four-district plan. 2022 Miss. Gen. Laws Ch. _____ (H.B. 384). This Court should now consider whether the State has satisfied the final judgment by "produc[ing] a constitutional congressional redistricting plan" [Dkt. #128 at 2], so as to determine whether to issue a new injunction of its own or to permit the new statutory plan to go into effect.

In the past, this Court has invited all parties to address whether a proposed plan would "satisfy all state and federal statutory and constitutional requirements." *Smith v. Clark*, 189 F. Supp. 2d 512 (S.D. Miss. 2002); [Dkt. #118]. A decade ago, this Court also held a hearing to consider its authority to act. [Dkt. #105]. The Republican Party suggests that the Court may want to follow a similar practice on this occasion, setting a hearing and inviting briefing on the following issues:

   A.   Whether the State of Mississippi has produced a constitutional congressional redistricting plan that satisfies all state and federal constitutional requirements, thus satisfying the conditions of the final judgment.

   B.   Whether the districts mandated by the final judgment now are unconstitutionally malapportioned, thus rendering it inequitable that the final judgment should remain in effect.

All responses should be expedited, because the qualifying deadline to run for the House of Representatives this year is March 1, 2022. Should the submission of any party necessitate an evidentiary hearing, then it should be scheduled at the earliest possible date.

For the reasons set out hereafter, this Court has authority to vacate its existing injunction, and it should set a procedure for determining its future actions.

## ARGUMENT

**I.  UNDER RULE 60(b)(5) THIS COURT MAY VACATE AN INJUNCTION WHEN CHANGED CIRCUMSTANCES SO WARRANT.**

The judgment of this Court, which has instructed the various defendants how to conduct congressional elections in Mississippi from 2012 through 2020, takes the form of an injunction. [Dkt. #128]. Injunctions have always been subject to modification or vacation when changed circumstances so warrant. The adoption of the Federal Rules of Civil Procedure did not create this authority, but merely regulated it.

Almost a century ago, in *United States v. Swift & Co.*, 286 U.S. 106 (1932), the Supreme Court considered an effort to modify an antitrust injunction which had originally been entered over a decade earlier. Even though the injunction had been entered by consent, the Court found that modification might be appropriate. "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent." *Id*., at 462. The Court continued, "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id.* The Court should grant relief "if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *Id.* Although the defendants failed to meet the standard in that case, judicial authority to modify an injunction was clearly established.

The standard to be met was clarified three decades ago in *Board of Educ. v. Dowell*, 498 U.S. 237 (1991), in which the Oklahoma City school system sought relief from a desegregation injunction imposed in a suit filed in 1961. Reviewing the precedents, the Court said, "*Swift* teaches . . . a decree may be changed upon an appropriate showing, and it holds that it may not be changed . . . if the purposes of the litigation as incorporated in the decree . . . have not been fully achieved." *Id*., at 247, quoting *United States v. United Shoe Mach.Corp.*, 391 U.S. 244, 2348 (1968). The

Court explained what that meant in the context of a continuing desegregation decree. "[A] finding by the District Court that the Oklahoma City School District was being operated in compliance with the commands of the Equal Protection Clause of the Fourteenth Amendment and that it was unlikely the school board would return to its former ways, would be a finding that the purposes of the desegregation litigation had been fully achieved." 498 U.S. at 247.

The very next year, in *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367 (1992), the Supreme Court explained that Rule 60(b)(5) provides a proper vehicle for seeking relief from an injunction. The sheriff sought to modify an existing injunction regulating jail conditions. The Supreme Court explained the test to be applied under Rule 60(b)(5):

> [A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance.

*Id.*, at 383 (footnote omitted).

Most recently, in *Horne v. Flores*, 557 U.S. 433 (2009), the Supreme Court considered a motion by Arizona officials under Rule 60(b)(5) for relief from an injunction controlling aspects of education finance. The Court examined the text of the rule to show how it applied:

> Rule 60(b)(5) permits relief from a judgment where "[i] the judgment has been satisfied, released or discharged; [ii] it is based on an earlier judgment that has been reversed or vacated; *or* [iii] applying it prospectively is no longer equitable." (Emphasis added). Use of the disjunctive "or" makes it clear that each of the provision's three grounds for relief is independently sufficient and therefore that relief may be warranted even if petitioners have not "satisfied" the original order. As petitioners argue, they may retain relief if prospective enforcement of that order "is no longer equitable."

*Id.*, at 454. The Court continued, "To determine the merits of this claim, the Court of Appeals needed to ascertain whether ongoing enforcement of the original order was supported by an ongoing violation of federal law . . . ." *Id.*

5

The Fifth Circuit has long recognized that Rule 60(b)(5) applies in redistricting cases. In *Jackson v. DeSoto Parish Sch. Bd.*, 585 F.2d 726 (5th Cir. 1978), plaintiffs filed a new action challenging an election system ordered in an earlier case. The Court explained that relief might be secured in a single action:

> The plaintiffs might have moved under Rule 60(b)(5), F.R.C.P., for relief from the prior judgment on the grounds that it "is no longer equitable that the judgment should have prospective application." Plaintiffs did not seek to overturn elections that took place under the challenged apportionment scheme, but to secure modification of the plan before any more elections were held. A Rule 60(b) motion would have allowed the judge to consider within a single action all issues relating to the DeSoto Parish apportionment plan.

*Id.,* at 730 n.1. More recently, relying on *Rufo*, the Court explained the duty of the movant in such a case:

> The burden is on the moving party to prove that modification is warranted, regardless of whether the party seeks to lessen its own responsibilities under the decree, impose a new and more effective remedy, or vacate the order entirely.

*League of United Latin American Citizens v. City of Boerne,* 659 F.3d 421, 438 (5th Cir. 2011). Here, the Republican Party seeks to vacate the injunction altogether.

After the 2010 census, this Court considered these precedents and determined that it had authority to modify its original injunction. Such authority was plain "because we expressly reserved jurisdiction, unlike the district court's original order in *Jackson*." [Dkt. #127 at 11 n.6]. The exercise of that authority was appropriate because "factual circumstances have changed that make applying the final judgment prospectively no longer equitable." [Dkt. #127 at 11]. "The parties are all in agreement that the result of the 2010 Decennial census shows that the four districts are now malapportioned, violating the constitutional one person, one vote requirement." [Dkt. #127 at 11-12].

6

Once again, the 2020 census demonstrates that the current injunction has become malapportioned and therefore unconstitutional. It seems unlikely that a case can be made for retaining the injunction for another election, but the Court should give all parties an opportunity to be heard. The Republican Party submits that, having done so, the Court should vacate that injunction.

## II.  THIS COURT SHOULD CONSIDER WHETHER THE NEW STATUTE MEETS ALL STATE AND FEDERAL STATUTORY AND CONSTITUTIONAL REQUIREMENTS.

Two decades ago, when this Court first revealed its proposed injunction, it asked the parties to address whether the plan would "satisfy all state and federal statutory constitutional requirements." *Smith*, 189 F. Supp. 2d 512. That approach is equally important as this Court considers whether to permit the statute which the Legislature has now adopted to take effect in place of the current final judgment, which is now malapportioned. The Court's judgment provides continuing relief "until such time as the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." [Dkt. #128 at 2]. The Court should now examine the statutory plan the State has produced to determine whether it has "satisfied" the judgment as provided by Rule 60(b)(5).

As *Jackson* declared, this Court may "consider within a single action all issues relating to the . . . apportionment plan." 585 F.2d at 730 n.1. The resolution of all constitutional and statutory issues in this litigation is consistent with established principles of equity which, as *Swift* demonstrates, antedate the Federal Rules. One of the maxims of equity, recognized in Mississippi as throughout Anglo-American jurisdictions, is that "[e]quity delights to do complete justice and not by halves." V. Griffith, *Mississippi Chancery Practice* § 36 at 38 (2d ed. 1950). The objective

7

is that "when the matter is thus settled there will be no doors left open out of which it is probable that further suits or further contention will spring." *Id.*, at 39. This Court should now examine all constitutional and statutory issues so as to close those doors.

The case law explains when defendants may be entitled to relief. In *Dowell*, the Supreme Court held that a desegregation injunction should be lifted when "the purposes of the desegregation litigation had been fully achieved," which would be demonstrated when the school district "was being operated in compliance with the commands of the Equal Protection Clause of the Fourteenth Amendment." 498 U.S. at 247. That same constitutional provision controls this redistricting litigation. This Court must consider whether the new statutory plan sufficiently satisfies the population equality requirements of the Fourteenth Amendment. Similarly, where an existing injunction protects statutory rights, defendants are entitled to relief when they are "doing exactly what this statute requires." *Horne*, 557 U.S. at 472.

This Court has recognized from the beginning that a redistricting plan must protect statutory rights under the Voting Rights Act, as well as the Constitution. Its opinion imposing its first injunction addressed its consistency with both section 2 and section 5 of the Act, now codified at 51 U.S.C. §§ 10301, 10304. *Smith v. Clark*, 189 F. Supp. 2d 529, 540 (S.D. Miss. 2002), *aff'd sub nom. Branch v. Smith*, 538 U.S. 254 (2003). The order modifying this Court's original injunction in 2011 declared that it would remain in place "until such time as the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." [Dkt. #128 at 2]. While that judgment does not mention § 2 of the Act, this Court again considered § 2 in 2011 when revising its earlier plan. [Dkt. #118 (asking parties whether revised injunction would "satisfy all state and federal statutory and constitutional and statutory requirements"); Dkt. #127 at 14-15]. Indeed, compliance

8

with § 2 has been mandatory ever since the Supreme Court of the United States sent back the original judicially devised redistricting plan "for further consideration in light of Section 2 of the Voting Rights Act of 1965." *Brooks v. Winter*, 461 U.S. 921 (1983), *vacating Jordan v. Winter*, 541 F. Supp. 1135 (N.D. Miss. 1982). Moreover, plaintiffs in *Buck* pray that this Court will enjoin "defendants from violating rights secured to plaintiffs by . . . §§ 2 and 5 of the Voting Rights Act of 1965." [Dkt. #6 at 12]. That is exactly what this Court has examined from the beginning of this litigation.

For these reasons, this Court, as it has done before, should instruct the parties to address whether the new statutory plan satisfies all state and federal statutory and constitutional requirements.

## CONCLUSION

Because the filing deadline is 36 days from today, the Republican Party asks this Court to require responses to this motion within seven days, allowing three days thereafter for rebuttal. This Court should invite the parties to address the two issues specified herein, and it should invite non-parties, including potential intervenors, to state any objections they might have to the new statutory plan. After a hearing,[1] this Court should vacate the current final judgment, declare that the new statutory plan satisfies all state and federal statutes and constitutional requirements, and permit it to go into effect.

---

[1] Because this Court has already conducted a two-day trial, and because this Court can take judicial notice of the census data on which the motion is based, the Republican Party doubts that the Court will see a need to conduct an evidentiary hearing. Should the Court choose to receive evidence, it should establish procedures so that all parties may properly prepare and respond.

RESPECTFULLY SUBMITTED, this the 24th day of January, 2022.

                                                **MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE**

                                  By:    */s/ Michael B. Wallace*
                                                      MICHAEL B. WALLACE

**OF COUNSEL:**

Michael B. Wallace (MSB #6904)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Ph: (601) 968-5500
Fax: (601) 968-5519
mbw@wisecarter.com
cec@wisecarter.com

**CERTIFICATE OF SERVICE**

      I, Michael B. Wallace, one of the attorneys for the Mississippi Republican Party Executive Committee, do hereby certify that I have this date filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record with ECF.

      **SO CERTIFIED**, this the 24th day of January, 2022.

                                                      */s/ Michael B. Wallace*
                                                      MICHAEL B. WALLACE