# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**JOHN ROBERT SMITH, SHIRLEY HALL**
**AND GENE WALKER**                                                                                      **PLAINTIFFS**

**VS.**                                                      **Civil Action No. 3:01-cv-855-HTW-DCB-EGJ**

**DELBERT HOSEMANN, Secretary of State of**
**Mississippi; JIM HOOD, Attorney General for the State of**
**Mississippi; HALEY BARBOUR,**
**Governor of the State of Mississippi; MISSISSIPPI**
**REPUBLICAN EXECUTIVE COMMITTEE; and**
**MISSISSIPPI DEMOCRATIC EXECUTIVE**
**COMMITTEE**                                                                 **DEFENDANTS**

**and**

**BEATRICE BRANCH, RIMS BARBER,**
**L.C. DORSEY, DAVID RULE,**
**JAMES WOODWARD, JOSEPH P. HUDSON,**
**and ROBERT NORVEL**
**INTERVENORS**

### CONSOLIDATED WITH

**KELVIN BUCK, ET AL.**                                                                            **PLAINTIFFS**

**VS.**                                                       **Civil Action No. 3:11-cv-717-HTW-LRA**

**HALEY BARBOUR, ET AL.**                                                               **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES OF THE PLAINTIFFS, KELVIN BUCK, THOMAS PLUNKETT, JEANETTE SELF, CHRISTOPHER TAYLOR, JAMES CROWELL, CLARENCE MAGEE, AND HOLLIS WATKINS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, OPPOSING THE MOTION OF THE DEFENDANT MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE TO VACATE INJUNCTION AND FOR OTHER RELIEF**

## INTRODUCTION

The State of Mississippi has a long history of racial discrimination in voting. Civil rights and voting rights activists and organizations have litigated to remedy that discrimination. The plaintiffs, Kelvin Buck, Thomas Plunkett, Jeanette Self, Christopher Taylor, James Crowell, Clarence Magee, and Hollis Watkins, on behalf of themselves and all others similarly situated ("the Buck plaintiffs"), are longtime civil rights and voting rights activists who are residents and registered voters in each of Mississippi's congressional districts. The instant case is a continuation of the state's voting discrimination efforts and the civil rights community's litigation in remedying that discrimination.

## FACTUAL AND PROCEDURAL HISTORY

The parties, for decades, have engaged in litigation over the creation and maintenance of a majority black congressional district in order to give black voters in Mississippi an equal opportunity to elect a congressional candidate of their choice. In fact, the current shape of the state's majority black Second Congressional District is the result of litigation in the early 1980's. See *Jordan v. Winter*, 541 F. Supp. 1135 (N. D. Miss. 1982) (three-judge court) (*per curiam*), *vacated, sub. nom. Brooks v. Winter*, 461 U. S. 921 (1983), *on remand*, 604 F. Supp. 807 (*per curiam*), *aff'd, sub. nom. Mississippi Republican Executive Committee v. Brooks*, 569 U. S. 1002 (1984). When the *Jordan v. Winter* case was resolved in 1984, Mississippi had five congressional districts.

However, the 2000 Decennial Census resulted in Mississippi losing a congressional seat. In 2001, John Walker Smith, Shirley Hall, and Gene Walker filed suit requesting this Court to draw four congressional districts for the 2002 congressional elections since the Mississippi Legislature failed to timely redistrict and obtain preclearance of a congressional redistricting plan.[1]

On February 26, 2002, this Court entered an injunction prohibiting the state from using the then existing five congressional district plan. The Court fashioned a four- district plan for use in the 2002 and succeeding election cycles. The Court Plan maintained, as much as possible, the shape of the majority black Second Congressional District that had been fashioned by the Court in *Jordan v. Winter*. The Court required that its redistricting plan be used until the state produced "a constitutional congressional redistricting plan that had been precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." *Smith v. Hosemann*, 852 F. Supp.2d 757, 759 (S. D. Miss. 2011) (three-judge court). The Court retained "jurisdiction to implement, enforce, and amend [its] order as shall be necessary and just." *Id*.

The court-drawn plan remained in effect until 2011. In 2011, defendant, the Mississippi Republican Party Executive Committee ("the Republican Party"), filed a motion, pursuant to Fed. R. Civ. P. 60(b)(5), requesting the Court to amend its 2002 final judgment on grounds that the judgment prospectively was no longer equitable. The Republican Party asserted that the Mississippi Legislature had not produced a constitutionally acceptable and precleared congressional redistricting plan for use in the 2012 congressional elections. The Court found that it had the jurisdiction and authority, under Fed. R. Civ. P. 60(b)(5), to amend its 2002 injunction. *Smith v.* Hosemann, supra. The 2010 Decennial Census revealed that the then existing

---

[1] In 2000, Mississippi was a jurisdiction covered under Section 4(b) of the Voting Rights Act of 1965 ("VRA") such that the state was required to obtain administrative or judicial preclearance of any new voting changes. See *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969); *Perkins v. Matthews*, 400 U. S. 379 (1971); *Hathorne v. Lovorn*, 457 U.S. 255 (1982); *Smith v. Clark*, 189 F.Supp.2d 502 (S.D. Miss. 2001) (three-judge court).

3

congressional districts were malapportioned.

On November 12, 2011, the Buck plaintiffs, filed a class action complaint seeking equitable relief since the congressional districts were unconstitutionally malapportioned. The Court referred to this set of plaintiffs as the "Buck" plaintiffs. On December 19, 2011, the Court consolidated the Buck plaintiffs' case with the 2001 lead case filed by the "Smith" plaintiffs in 2001.

Then, on December 30, 2011, the Court entered its opinion and final judgment holding: (1) that the Court had jurisdiction, pursuant to Fed. R. Civ. P. 60(b)(5), to amend its February 26, 2002 final judgment; (2) that the existing congressional districting plan was unconstitutionally malapportioned; and (3) the remedy for that malapportionment was the use of that plan, "with only such modifications as were necessary to equalize the population among the four districts." *Smith v. Hosemann*, supra, at 764. The Court then made modifications to the 2002 redistricting plan and ordered its use, as modified, in the 2012 and succeeding congressional elections. The Court held that the court-drawn plan would be used "until such time as the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." [Doc. No. 128 at 2]. The Court, as it did in 2002, retained "jurisdiction to implement, enforce, and amend [its] order as shall be necessary and just." *Smith v. Hosemann*, supra, at 767. The 2011 court-drawn plan is the current congressional districting plan.[2]

The 2020 Decennial Census has revealed that the 2011 court-drawn plan has, over the past decade, become unconstitutionally malapportioned.[3] The total range of population deviation under

---

[2] A copy of the current congressional districting plan implemented by the Court on December 30, 2011 is attached to plaintiff's response to the Republican Party's motion to vacate as Exhibit "A".

[3] According to the 2020 Decennial Census, Mississippi has a total population of 2,961,279 persons. The ideal population for each congressional district is 740,320 persons. Mississippi's Second Congressional District needs to gain 65,829 persons in order to have an idea population, and the state's Fourth Congressional District needs to lose 37,196 persons in order to have an ideal population. The total range of population deviation percentage in the state's current districting scheme is 13.92%. In order to comply with the equal population requirements of Article 1, Clause 2 of the United States Constitution, the Mississippi Legislature is required to make a good faith effort to achieve precise

4

the current plan is 19.32% which makes it constitutionally unacceptable.

On November 12, 2021, the Mississippi Joint Congressional Redistricting and Legislative Reapportionment Committee ("the Joint Committee") sent a notice to its members informing them that they would meet in the New Capitol Building on November 19, 2021 to, *inter alia*, adopt criteria for congressional redistricting.[4]  The Joint Committee met on November 19, 2021 and adopted the following criteria for congressional redistricting: (a) "[d]istrict population should be as equal as practicable;" (b) each district should be contiguous; (c) the congressional plan should comply with all applicable federal and state laws "including Section 2 of the Voting Rights Act of 1965, as amended;" and (d) "[t]he Committee should consider the neutral redistricting factors employed by the Court in *Smith v. Hosemann*."

The neutral redistricting factors employed by the Court in *Smith v. Hosemann* were: (a) compactness; (b) avoid splitting county and municipal boundaries; (c) preserve, as much as possible, historical and regional interests; (d) maintain the major universities and military bases in separate districts; (e) place growth areas in separate districts; (f) avoid pitting incumbents against each other; and (g) keep the distance of travel within districts  "approximately the same as they were under the Court's 2002 Plan." *Smith v. Hosemann*, supra, at 766-767.

The NAACP submitted its proposed congressional redistricting plan to the Joint Committee on November 30, 2011.[5]  The NAACP Plan does not subordinate racially neutral criterial to racial considerations.  The plan satisfies all of the Joint Committee's criteria, including the racially neutral criteria listed in *Smith v. Hosemann*, and it complies with Section 2 of the Voting Rights

---

mathematical equality of the population among the state's congressional districts. *Karcher v. Daggett*, 462 U. S. 725 (1983); *Kirkpatrick v. Preisler*, 394 U. S. 526 (1969).
[4] A copy of the notice sent to members of the Joint Committee with the criteria for congressional redistricting attached is attached to plaintiff's response to the Republican Party's motion to vacate as Exhibit "D".
[5] A copy of the NAACP Plan is attached to plaintiff's response to the Republican Party's motion to vacate as Exhibit "C".

5

Act of 1965[6] ("the VRA")..Importantly, the plan, like all court-ordered plans since 2000, makes only minor adjustments to the current plan in order to comply with both the federal and state constitutions as well as Section 2 of the VRA.[7]

Then, in January, 2022, the Mississippi Legislature adopted and the Governor signed a four-district congressional plan ("the State Plan").[8] However, that plan, as the plaintiff and NAACP will prove in an evidentiary hearing, was crafted for a racially discriminatory purpose and constitutes a racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment to the United States Constitution; and it violates Section 2 of the VRA.[9]

On January 24, 2022, the Republican Party, pursuant to Fed. R. Civ. P. 60(b)(5), filed its current motion to vacate the court's 2011 final judgment and for other relief. The Republican Party suggests that the Court require briefing on at least these two issues: (1) whether the current congressional districts are malapportioned such that the 2011 final judgment should be vacated and (2) whether the State Plan satisfies all federal and state constitutional requirements?

The Buck plaintiffs agree that the current congressional districting scheme is unconstitutionally malapportioned. This fact should not be an issue. However, the Buck plaintiffs suggest that an evidentiary hearing be held on the issues of (1) whether the State Plan was crafted for a racially discriminatory purpose and (2) whether it complies with the requirements of Section

---

[6] 52 U. S. C. Sec. 10301.

[7] Although this Court's December 30, 2011 order and final judgment required the State of Mississippi to produce a constitutional redistricting plan that has been precleared under Section 5 of the VRA, recent decisions of this Court have held that Mississippi is no longer required to obtain Section 5 preclearance of any voting changes. See *Thompson v. AG of Miss.*, 129 F. Supp.3d 430 (S.D. Miss. 2015) (three-judge court), *later case*, 2021 WL 3673108, 2021 U.S. Dist. LEXIS 155628 (2021). Nevertheless, any congressional redistricting plan must still comply with Section 2 of the VRA if the *Thornburg v. Gingles* preconditions exist and the totality of the circumstances indicates there is vote dilution.. See *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006); *Cooper v. Harris*, 581 U.S.___, 137 S. Ct. 1455 (2017); *Miller v. Johnson*, 515 U.S. 900 (1995); *Abrams v. Johnson*, 521 U.S. 74 (1997); *Jordan v. Winter*, 604 F. Supp. 807 (N.D. Miss. 1984) (three-judge court).

[8] A copy of the State Plan is attached to plaintiff's response to the Republican Party's motion to vacate as Exhibit "B".

[9] The NAACP intends to file a separate lawsuit challenging the State Plan and offering an alternative plan or intervene in this case.

2 of the VRA.

The Buck plaintiffs intend to file a motion to amend the Court's December 30, 2011 final judgment by enjoining use of the current congressional districts for congressional elections and implementing the NAACP Plan, or a court-drawn plan, as an interim plan until the State of Mississippi produces a redistricting plan that is constitutional and satisfies the requirements of Section 2 of the VRA.

## ARGUMENT

### 1.   THE COURT MAY AMEND ITS FINAL JUDGMENT UNDER RULE 60(B)(5)

The Republican Party argues that the Court should vacate its 2011 final judgment. Mr. Watkins disagrees. The Court should not vacate its final judgment. Instead, the Court should amend its final judgment. After all, the Court has both the jurisdiction and authority to amend its December 30, 2011 final judgment. See *United States v. Swift & Co.*, 286 U.S. 106 (1932); *Board of Educ. V. Dowell*, 498 U.S. 237 (1991); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992); *Kirksey v. Jackson*, 714 F.2d 42 (5th Cir. 1983); *Smith v. Hosemann*, supra. Since the Court previously decided this issue it is governed by the law of the case doctrine. See *Arizona v. California*, 460 U.S. 605 (1983). In 2011, the Court amended its 2002 final judgment instead of vacating it. The Court should, again, amend its final judgment instead of vacating it. *United States v. Swift & Co.*, supra; *Board of Educ. V. Dowell*, supra *Rufo v. Inmates of Suffolk County Jail*, supra; *Kirksey v. Jackson*, supra; *Smith v. Hosemann*, supra.

### 2.   THE COURT SHOULD CONSIDER THE LEGALITY OF THE STATE PLAN

The Republican Party argues that the Court should consider whether the State Plan meets all of the federal and state constitutional and statutory requirements for a redistricting plan. The Buck plaintiffs agree. However, the consideration should be made by the three-judge court after an evidentiary hearing on the issues. The three-judge court is required to make this consideration

because the Buck plaintiffs challenge the constitutionality of the state's congressional redistricting plan. See *Thomas v. Bryant*, 938 F.3d 134 (5th Cir. 2019); 28 U.S.C. Sec. 2284(a).

The Buck plaintiffs request an evidentiary hearing on the issue of the legality[10] of the State Plan because they bear the burden of proving the plan was crafted for a racially discriminatory purpose, is a racial gerrymander, and/or violates Section 2 of the VRA. See *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788 (2017); *Abbott v. Perez*, 138 S. Ct. 2305 (2018); *Cooper v. Harris*, supra. That proof could be either direct or circumstantial evidence. *Miller v. Johnson*, supra.

## CONCLUSION

Since the current congressional districts are unconstitutionally malapportioned, the Court should amend its 2011 final judgment by enjoining use of the current congressional districts in the 2022 and succeeding congressional elections until the State of Mississippi produces a plan that complies with the U. S. Constitution and Section 2 of the VRA. The Court should consider whether to push back the candidate qualification deadline and primaries, if necessary, in order to schedule an evidentiary hearing on the issue of whether the State Plan complies with the United States Constitution and Section 2 of the VRA. The Court should implement the NAACP Plan, or a court-drawn plan, as an interim plan and allow congressional elections to proceed as scheduled while the Court conducts an evidentiary hearing and decide whether the State Plan is unconstitutional and/or violates Section 2 of the VRA.[11]

---

[10] "Legality", in this context, means that the State Plan is constitutional and complies with Section 2 of the VRA. Mr. Watkins challenges the constitutionality of the State Plan because it was crafted for a racially discriminatory purpose.
[11] The least disruptive alternative for Mississippi voters and election officials would be to implement the NAACP Plan as an interim plan while the parties litigate the federal constitutional and statutory issues.

This the 1st day of February, 2022.

          **RESPECTFULLY SUBMITTED,**

          **KELVIN BUCK, ET AL., on Behalf of Themselves and All Others Similarly Situated,**

          **PLAINTIFF**

By: */s/ Carroll Rhodes*
   CARROLL RHODES


   CARROLL RHODES, ESQ., MSB # 5314
   LAW OFFICES OF CARROLL RHODES
   POST OFFICE BOX 588
   HAZLEHURST, MISSISSIPPI 39083
   TELEPHONE: (601) 894-4323
   FACSIMILE: (601) 894-1451
   e-mail: crhode@bellsouth.net

   JOHN L. WALKER, ESQ., MSB # 6883
   WALKER LAW GROUP, PC
   1410 LIVINGSTON LANE, SUITE A
   POST OFFICE BOX 22849
   JACKSON, MISSISSIPPI 39225-2849
   TELEPHONE: (601) 948-4589
   FACSIMILE: (601) 354-2507
   e-mail: jwalker@walkergrouppc.com

   E. CARLOS TANNER, III, ESQ.
   MSB NO. 102713
   TANNER & ASSOCIATES, LLC
   POST OFFICE BOX 3709
   JACKSON, MISSISSIPPI 39207
   TELEPHONE: (601) 460-1745
   FACSIMILE: (662) 796-3509
   e-mail: carlos.tanner@thetannerlawfirm.com

   COUNSEL FOR PLAINTIFFS
   KELVIN BUCK, ET AL., on Behalf of
   Themselves and All Others Similarly Situated

**CERTIFICATE OF SERVICE**

I, Carroll Rhodes, one of the attorneys for the Buck plaintiffs, do hereby certify that I have this date filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record with PPACER/ECF.

This the 1st day of February, 2022.

                                              */s/ Carroll Rhodes*
                                              CARROLL RHODES