IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

JOHN ROBERT SMITH, et al.

Plaintiffs,

v.

**3:01-cv-855-HTW-DCB**

DELBERT HOSEMAN, et al.,

Defendants

and

BEATRICE BRANCH, et al.,

Intervenors

KELVIN BUCK, et al.,

Plaintiffs,                **3:11-cv-717-HTW-LRA**

v.

HALEY BARBOUR, et al.,

Defendants.

# DECLARATION OF WILLIAM S. COOPER

WILLIAM S. COOPER, acting in accordance with 28 U.S.C. § 1746, Federal Rule of Civil Procedure 26(a)(2)(B), and Federal Rules of Evidence 702 and 703, does hereby declare and say:

# I. Introduction

1. My name is William S. Cooper. I have a B.A. in Economics from Davidson College. As a private consultant, I currently serve as a redistricting and demographics expert for the *amici*.

**(a) <u>Experience</u>**

2. I have testified at trial as an expert witness on redistricting and demographics in federal courts in about 50 voting rights cases since the late 1980s. I have filed declarations in about 50 other voting rights cases.

3. In 2022, I have testified at three trials on behalf of plaintiffs challenging post-2020 Census redistricting plans under Section 2 of the Voting rights Act: *Caster v. Merrill*, No. 2:21-CV-1536-AMM (N.D. Ala.), *Pendergrass v. Raffensperger,* No. 1:21-CV-05339-SCJ (N.D. GA), and *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No.1:21-cv-5337 (N.D. Ga). I also testified at trial in a voter suppression lawsuit: *Disability Rights Florida v. Lee,* No. 4:21-cv-187-MW-MAF (N.D. Fla.).

4.     In 2022, I also filed two declarations as the Gingles 1 expert for the plaintiffs in *Baltimore NAACP v Baltimore County,* No. 21-cv-03232-LKG (Md.).

5.     As shown in the appendix to **Exhibit A**, I have drawn state, county, and municipal election district plans in Mississippi for Sec. 2 plaintiffs and local governments since the 1990s. I served as the Gingles 1 expert for the plaintiffs in *Thomas v. Reeves*, No. 18-cv-441 (S.D. Miss.). I also testified at trial in *Smith v. Clark*, 189 F. Supp. 2d 503 (S.D. Miss. 2002).

## (b) Purpose of Declaration

6.     For this matter, counsel for the *amici* asked me to prepare two illustrative congressional plans that adhere to traditional redistricting principles and avoid packing Black voters into Congressional District 2 (CD 2). I was also asked to take into account, to the extent practicable, the redistricting factors identified by the Court in *Smith v. Hosemann,* 852 F.Supp.2d 757 (2011) -- for example, (1) keep the Delta counties in a single congressional district, (2) assign each of the four state universities to different districts, and (3) assign the three military bases to different districts.

**(c) <u>Methodology</u>**

7.     I relied on the PL94-171 data published by the U.S. Census Bureau to develop the two illustrative plans.  The GIS software that I use is called *Maptitude,* developed by the Caliper Corporation.[1]

8.     *Maptitude* is deployed by many local and state governing bodies across the country for redistricting and other types of demographic analysis. The *Maptitude* software processes electronic Census Bureau geographic file information in order to produce a map for display on a computer screen.  The software also merges demographic data and street address information to match the relevant decennial Census geography.

**(d) <u>Summary Conclusions</u>**

- Based on the 2020 Census, a congressional plan for Mississippi can be drawn that complies with **<u>all</u>** traditional redistricting principles, as well as Mississippi-specific redistricting factors identified by the Court.
- As shown in the illustrative plans that I have prepared, a key tenet of traditional redistricting principles – the non-dilution of minority voting strength – can be achieved by unpacking the Black population in CD 2 (under the Benchmark 2011 Plan and the Adopted 2022 Plan) and by reconfiguring CD 3.

---

[1] See: https://www.caliper.com/maptovu.htm

## II. The Benchmark 2011 Plan and the Adopted 2022 Plan

9.      According to the 2020 Census, the Any Part Black voting age

population ("BVAP") in Mississippi is 36.14% -- up from 34.99% in 2011. For all

ages, the 2020 AP Black population is 37.94% -- the highest in the nation.[2]

10.      According to the 2020 Census, the Benchmark 2011 Plan

("Benchmark Plan") is malapportioned.  Majority-Black CD 2 is underpopulated by

nearly 9%. The three other congressional districts are overpopulated.

11.      The task before the Legislature's map drawers was simple –

reconfigure CD 2 and balance the population in the remaining districts, while

adhering to traditional redistricting principles:  (1) meet one-person one-vote

requirements, (2) create reasonably shaped, compact and contiguous districts, (3)

respect  communities of interest, (4) preserve political subdivision boundaries, and

(5) avoid dilution of minority voting strength.

12.      In my opinion, the Adopted Plan fails to adhere to traditional

redistricting principles because the Legislature's map drawers chose to maintain the

---

[2] In this declaration, "African American" or "Black" refers to persons who are Any Part Black (i.e., Single Race Black or persons of two or more races and some part Black), including Hispanic Black. In some instances (e.g., for historical comparisons), numerical or percentage references identify Single Race Black as "SR Black" and Any Part Black as "AP Black." Unless noted otherwise, "Black" means AP Black. It is my understanding that following the U.S. Supreme Court decision in *Georgia v. Ashcroft*, 539 U.S. 461 (2003), the "Any Part" definition is an appropriate Census classification to use in most Section 2 cases.

BVAP in CD 2 at an unnecessarily high level of 62.15% -- thereby limiting Black

voting strength elsewhere in the state. There is contemporary evidence that a BVAP

percentage in the low to mid-50s is sufficient for Black voters to elect a candidate

of choice. See, for example, State Senate District 22 drawn by the State in 2018 and

anchored in the Delta (*Thomas v. Reeves*).

13.    The table in **Exhibit B** details counties, precincts, and parts of

precincts that were shifted from one district under the Benchmark Plan to another in

the Adopted 2022 Plan ("Adopted Plan").

14.    Overall, the 2020 voting age population ("VAP") shifted into a new

district from the Benchmark Plan to the Adopted Plan is 43.63%. However, an

analysis of shifts involving CD 2 reveals that almost no population was shifted out

of CD 2 and the population shifted into CD 2 was majority-Black: **<u>Into CD2</u>** (total

pop. – **66,371** –**50.35% BVAP**); **<u>From CD 2</u>** (total pop. – **543** – 82.37 % BVAP),

representing a single precinct in Hinds County.

## C. ILLUSTRATIVE PLANS

15.    The two illustrative plans I have prepared demonstrate that plans can

be drawn that meet all traditional redistricting principles, including a key

redistricting principle not respected in the Adopted Plan  -- the non-dilution of

minority voting strength.  This can be achieved without sacrificing compactness,

without splitting additional counties or precincts, and while preserving communities

of interest such as the Delta and state universities in a single district.

**(a) <u>Illustrative Plan 1</u>**

16.     The map in **Figure 1** (on the next page) depicts Illustrative Plan 1. District 2 is 54.32% BVAP and District 3 is 41.9% BVAP.  A higher resolution map of Illustrative Plan 1 is in **Exhibit C-1**.

17.     District 1 is in central and north Mississippi. It encompasses 23 whole counties, sharing Monroe County with District 3. The University of Mississippi is in District 1.

18.     District 2 is anchored in Hinds County and the Delta. It encompasses 16 whole counties and splits Rankin County between Districts 2 and 3. Jackson State is in District 2.

19.     District 3 is in central and southwest Mississippi. It encompasses 27 whole counties, splitting Rankin County (with District 2) and Forrest County (with District 4). Mississippi State is in District 3.

20.     District 4 is in southeast Mississippi and the Gulf Coast. It encompasses 12 whole counties. Southern Mississippi University is in the District 4 portion of Forrest County.

**Figure 1**

## Illustrative Plan 1



21.     The table in **Figure 2** shows 2020 summary population statistics for

the Adopted Plan. **Exhibit C-2** contains more detailed 2020 population statistics.

**Figure 2**

### Illustrative Plan 1 – 2020 Census

| District | Population | Deviation | 18+ Pop | % 18+ AP Black | % 18+ NH White |
|---|---|---|---|---|---|
| 1 | 740319 | -1 | 569508 | 26.69% | 67.40% |
| 2 | 740320 | 0 | 569020 | 54.32% | 41.15% |
| 3 | 740322 | 2 | 571940 | 41.90% | 53.15% |
| 4 | 740318 | -2 | 567131 | 21.57% | 69.38% |

**(b) Illustrative Plan 2**

22.     The map in **Figure 3** (on the next page) depicts Illustrative Plan 2. District 2 is 54.58% BVAP and District 3 is 42.12% BVAP.  A higher resolution map of Illustrative Plan 2 is in **Exhibit D-1.**

23.     District 1 is in central and north Mississippi. It encompasses 23 whole counties. Two precincts in Lowndes County (containing Columbus AFB) are in District 1, with the remainder in District 3. The University of Mississippi is in District 1.

24.     District 2 is anchored in Hinds County and the Delta. It encompasses 16 whole counties and splits Rankin County between Districts 2 and 3. Jackson State is in District 2.

25.     District 3 is in central and southwest Mississippi. It encompasses 27 whole counties, splitting Lowndes County (with District 1), Rankin County (with District 2), and Forrest County (with District 4). Mississippi State is in District 3. Meridian Naval Air Station (Lauderdale County) is in District 3.

26.     District 4 is in southeast Mississippi and the Gulf Coast. It encompasses 12 whole counties. Southern Mississippi University is in the District 4 portion of Forrest County. The military installations in Harrison County are in District 4.

**Figure 3**



27. The table in **Figure 2** shows 2020 summary population statistics for the Adopted Plan. **Exhibit D-2** contains more detailed 2020 population statistics.

**Figure 4**

**Illustrative Plan 2 – 2020 Census**

| District | Population | Deviation | 18+ Pop | % 18+ AP Black | % 18+ NH White |
|---|---|---|---|---|---|
| 1 | 740320 | 0 | 569508 | 26.22% | 67.85% |
| 2 | 740316 | -4 | 569020 | 54.58% | 40.67% |
| 3 | 740325 | 5 | 571940 | 42.12% | 53.18% |
| 4 | 740318 | -2 | 567131 | 21.57% | 69.38% |

## (c) Compactness Scores

28.    Both Illustrative Plans are reasonably shaped and compact.  As shown in **Figure 5**, according to the area-based Reock[3] compactness test, there is virtually no overall difference between the Adopted Plan and the Illustrative Plans. **Figure 6** shows that the compactness scores for CD 2 in both Illustrative Plans are better than the compactness scores for CD 2 in the Adopted Plan

**Figure 5**

**Compactness Comparison**

|  | Reock | |
|---|---|---|
|  | Mean | Low |
| **Adopted Plan** | .42 | .30 |
| **Illustrative Plan 1** | .38 | .25 |
| **Illustrative Plan 2** | .42 | .29 |

[3] The Reock test is an area-based measure that compares each district to a circle, which is considered to be the most compact shape possible. For each district, the Reock test computes the ratio of the area of the district to the area of the minimum enclosing circle for the district.  The measure is always between 0 and 1, with 1 being the most compact. The Reock test computes one number for each district and the minimum, maximum, mean and standard deviation for the plan." *Maptitude For Redistricting* software documentation (authored by the Caliper Corporation).

**Figure 6**

| | Reock | | | |
|---|---|---|---|---|
| | CD 1 | CD 2 | CD 3 | CD 4 |
| **Adopted Plan** | .47 | .30 | .35 | .57 |
| **Illustrative Plan 1** | .47 | .34 | .25 | .46 |
| **Illustrative Plan 2** | .55 | .37 | .29 | .46 |

### 

I reserve the right to continue to supplement my reports in light of additional facts, testimony and/or materials that may come to light.

Executed on:  February 24, 2022

_____
WILLIAM S. COOPER

.

Exhibit A

January 31, 2022

*William S. Cooper*
*P.O. Box 16066*
*Bristol, VA 24209*
*276-669-8567*
*bcooper@msn.com*

## Summary of Redistricting Work

I have a B.A. in Economics from Davidson College in Davidson, North Carolina.

Since 1986, I have prepared proposed redistricting maps of approximately 750 jurisdictions for Section 2 litigation, Section 5 comment letters, and for use in other efforts to promote compliance with the Voting Rights Act of 1965. I have analyzed and prepared election plans in over 100 of these jurisdictions for two or more of the decennial censuses – either as part of concurrent legislative reapportionments or, retrospectively, in relation to litigation involving many of the cases listed below.

From 1986 to 2021, I have prepared election plans for Section 2 litigation in Alabama, Connecticut, Florida, Georgia, Louisiana, Maryland, Mississippi, Missouri, Montana, Nebraska, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Wyoming.

## Post-2020 Redistricting Experience

Since the release of the 2020 Census in August 2021, I have served as a redistricting/re-precincting consultant to the San Juan County, Utah Commission. On December 21, 2021, the San Juan County Commission adopted a three-district commission plan that I developed.

In October 2021, I briefly served as a consultant to the city council in Wenatchee, Washington and determined that the 2018 redistricting plan I drew is not malapportioned under the 2020 Census.

1

On January 5, 2022, I testified at trial in the Northern District of Alabama in *Caster v. Merrill*, No. 21-cv-1536 (N.D. Ala.), on behalf of plaintiffs challenging Alabama's 2021 congressional plan under Section 2 of the Voting Rights Act. On January 24, 2022 a 3-judge panel ruled in favor of the plaintiffs.

## 2010s Redistricting Experience

I developed statewide legislative plans on behalf of clients in nine states (Alabama, Connecticut, Florida, Georgia, Kentucky, Mississippi, South Carolina, Texas, and Virginia), as well as over 150 local redistricting plans in approximately 30 states – primarily for groups working to protect minority voting rights. In addition, I have prepared congressional plans for clients in eight states (Alabama, Florida, Georgia, Louisiana, Maryland, Ohio, Pennsylvania, South Carolina, and Virginia).

In March 2011, I was retained by the Sussex County, Virginia Board of Supervisors and the Bolivar County, Mississippi Board of Supervisors to draft new district plans based on the 2010 Census. In the summer of 2011, both counties received Section 5 preclearance from the U.S. Department of Justice (DOJ).

Also in 2011, I was retained by way of a subcontract with Olmedillo X5 LLC to assist with redistricting for the Miami-Dade County, Florida Board of Commissioners and the Miami-Dade, Florida School Board. Final plans were adopted in late 2011 following public hearings.

In the fall of 2011, I was retained by the City of Grenada, Mississippi to provide redistricting services. The ward plan I developed received DOJ preclearance in March 2012.

In 2012 and 2013, I served as a redistricting consultant to the Tunica County, Mississippi Board of Supervisors and the Claiborne County, Mississippi Board of Supervisors.

In *Montes v. City of Yakima* (E.D. Wash. Feb. 17, 2015) the court adopted, as a remedy for the Voting Rights Act Section 2 violation, a seven single-member district plan that I developed for the Latino plaintiffs.  I served as the expert for the Plaintiffs in the liability and remedy phases of the case.

In *Pope v. Albany County* (N.D.N.Y. Mar. 24, 2015), the court approved, as a remedy for a Section 2 violation, a plan drawn by the defendants, creating a new Black-majority district.  I served as the expert for the Plaintiffs in the liability and remedy phases of the case.

In 2016, two redistricting plans that I developed on behalf of the plaintiffs for consent decrees in Section 2 lawsuits in Georgia were adopted (*NAACP v. Fayette County, Georgia* and *NAACP v. Emanuel County, Georgia)*.

In 2016, two federal courts granted summary judgment to the plaintiffs based in part on my *Gingles 1* testimony: *Navajo Nation v. San Juan County, Utah* (C.D. Utah 2016) and NAACP v. *Ferguson-Florissant School District, Missouri* (E. D. Mo. August 22, 2016).

Also in 2016, based in part on my analysis, the City of Pasco, Washington admitted to a Section 2 violation. As a result, in *Glatt v. City of Pasco* (E.D. Wash. Jan. 27, 2017), the court ordered a plan that created three Latino majority single-member districts in a 6 district, 1 at-large plan.

In 2018, I served as the redistricting consultant to the Governor Wolf interveners at the remedial stage of *League of Women Voters, et al. v. Commonwealth of Pennsylvania*.

In August 2018, the Wenatchee City Council adopted a hybrid election plan that I developed – five single-member districts with two members at-large. The Wenatchee election plan is the first plan adopted under the Washington Voting Rights Acts of 2018.

3

In February 2019, a federal court ruled in favor of the plaintiffs in a Section 2 case regarding Senate District 22 in Mississippi, based in part on my *Gingles* 1 testimony in *Thomas v. Bryant (S.D. Ms. Feb 16, 2019).*

In the summer of 2019, I developed redistricting plans for the Grand County (Utah) Change of Form of Government Study Committee.

In the fall of 2019, a redistricting plan I developed for a consent decree involving the Jefferson County, Alabama Board of Education was adopted *Traci Jones, et al. v. Jefferson County Board of Education, et al*.

In May 2020, a federal court ruled in favor of the plaintiffs in a Section 2 case in *NAACP et al. v. East Ramapo Central School District, NY,* based in part on my *Gingles* 1 testimony. In October 2020, the federal court adopted a consent decree plan I developed for elections to be held in February 2021.

In May and June of 2020, I served as a consultant to the City of Quincy, Florida – the Defendant in a Section 2 lawsuit filed by two Anglo voters (*Baroody v. City of Quincy*). The federal court for the Northern District of Florida ruled in favor of the Defendants. The Plaintiffs voluntarily dismissed the case.

In the summer of 2020, I provided technical redistricting assistance to the City of Chestertown, Maryland.

I am currently a redistricting consultant and expert for the plaintiffs in *Jayla Allen v. Waller County, Texas.* I testified remotely at trial in October 2020.

Since 2011, I have served as a redistricting and demographic consultant to the Massachusetts-based Prison Policy Initiative for a nationwide project to end prison-based gerrymandering. I have analyzed proposed and adopted election plans in about 25 states as part of my work.

4

In 2018 (Utah) and again in 2020 (Arizona), I have provided technical assistance to the Rural Utah Project for voter registration efforts on the Navajo Nation Reservation.

## Post-2010 Demographics Experience

My trial testimony in Section 2 lawsuits usually includes presentations of U.S. Census data with charts, tables, and/or maps to demonstrate socioeconomic disparities between non-Hispanic Whites and racial or ethnic minorities.

I served as a demographic expert for plaintiffs in four state-level voting cases related to the Covid-19 pandemic (South Carolina, Alabama, and Louisiana) and state court in North Carolina.

I have also served as an expert witness on demographics in non-voting trials. For example, in an April 2017 opinion in *Stout v. Jefferson County Board of Education* (Case no.2:65-cv-00396-MHH), a school desegregation case involving the City of Gardendale, Ala., the court made extensive reference to my testimony.

I provide technical demographic and mapping assistance to the Food Research and Action Center (FRAC) in Washington D.C and their constituent organizations around the country. Most of my work with FRAC involves the Summer Food Program and Child and Adult Care Food Program. Both programs provide nutritional assistance to school-age children who are eligible for free and reduced price meals. As part of this project, I developed an online interactive map to determine site eligibility for the two programs that has been in continuous use by community organizations and school districts around the country since 2003. The map is updated annually with new data from a Special Tabulation of the American Community Survey prepared by the U.S. Census Bureau for the Food and Nutrition Service of the U.S. Department of Agriculture.

## Historical Redistricting Experience

In the 1980s and 1990s, I developed voting plans in about 400 state and local jurisdictions – primarily in the South and Rocky Mountain West.  During the 2000s and 2010s, I prepared draft election plans involving about 350 state and local jurisdictions in 25 states. Most of these plans were prepared at the request of local citizens' groups, national organizations such as the NAACP, tribal governments, and for Section 2 or Section 5 litigation.

Election plans I developed for governments in two counties – Sussex County, Virginia and Webster County, Mississippi –  were adopted and precleared in 2002 by the U.S. Department of Justice. A ward plan I prepared for the City of Grenada, Mississippi was precleared in August 2005. A county supervisors' plan I produced for Bolivar County, Mississippi was precleared in January 2006.

In August 2005, a federal court ordered the State of South Dakota to remedy a Section 2 voting rights violation and adopt a state legislative plan I developed (*Bone Shirt v. Hazeltine*).

 A county council plan I developed for Native American plaintiffs in a Section 2 lawsuit (*Blackmoon v. Charles Mix County*) was adopted by Charles Mix County, South Dakota in November 2005. A plan I drafted for Latino plaintiffs in Bethlehem, Pennsylvania (*Pennsylvania Statewide Latino Coalition v. Bethlehem Area School District*) was adopted in March 2009. Plans I developed for minority plaintiffs in Columbus County, North Carolina and Montezuma- Cortez School District in Colorado were adopted in 2009.

Since 1986, I have testified at trial as an expert witness on redistricting and demographics in federal courts in the following voting rights cases (approximate most recent testimony dates are in parentheses). I also filed declarations and was deposed in most of these cases.

**Alabama**
*Caster v. Merrill* (2022)
*Chestnut v  Merrill (2019)*
*Alabama State Conference of the NAACP v. Alabama (2018)*
*Alabama Legislative Black Caucus et al. v. Alabama et al. (2013)*

**Colorado**
*Cuthair v. Montezuma-Cortez School Board (1997)*

**Florida**
*Baroody v. City of Quincy (2020)*

**Georgia**
*Cofield v. City of LaGrange (1996)*
*Love v. Deal (1995)*
*Askew v. City of Rome (1995)*
*Woodard v. Lumber City (1989)*

**Louisiana**
*Terrebonne Parish NAACP v. Jindal, et al. (2017)*
*Wilson v. Town of St. Francisville (1996)*
*Reno v. Bossier Parish (1995)*
*Knight v. McKeithen (1994)*

**Maryland**
*Cane v. Worcester County (1994)*

**Mississippi**

*Thomas v. Bryant (2019)*
*Fairley v. Hattiesburg (2014)*
*Boddie v. Cleveland School District (2010)*
*Fairley v. Hattiesburg (2008)*
*Boddie v. Cleveland  (2003)*
*Jamison v. City of Tupelo (2006)*
*Smith v. Clark (2002)*
*NAACP v. Fordice (1999)*
*Addy v Newton County (1995)*
*Ewing v. Monroe County (1995)*
*Gunn v. Chickasaw County  (1995)*
*Nichols v. Okolona (1995)*

**Montana**
*Old Person v. Brown (on remand) (2001)*
*Old Person v. Cooney (1998)*

**Missouri**
*Missouri NAACP v. Ferguson-Florissant School District (2016)*

**Nebraska**
*Stabler v. Thurston County (1995)*

***New York***
*NAACP v. East Ramapo Central School District (2020)*
*Pope v. County of Albany (2015)*
*Arbor Hills Concerned Citizens v. Albany County (2003)*

**Ohio**
*A. Philip Randolph Institute, et al. v. Ryan (2019)*

**South Carolina**
*Smith v. Beasley (1996)*

**South Dakota**
*Bone Shirt v. Hazeltine (2004)*
*Cottier v. City of Martin (2004)*

**Tennessee**
*Cousins v. McWherter (1994)*
*Rural West Tennessee  African American Affairs Council v. McWherter (1993)*

***Texas***
*Jayla Allen v. Waller County, Texas*

***Utah***
*Navajo Nation v. San Juan County (2017),*brief testimony –11 declarations, 2 depositions

**Virginia**
*Smith v. Brunswick County (1991)*
*Henderson v. Richmond County (1988)*
*McDaniel v. Mehfoud (1988)*
*White* v. *Daniel (1989)*

***Wyoming***
*Large v. Fremont County (2007)*

In addition, I have filed expert declarations or been deposed in the following

cases that did not require trial testimony. The dates listed indicate the deposition date or

date of last declaration or supplemental declaration:

**Alabama**
*People First of Alabama v. Merrill (2020),* Covid-19 demographics only
*Alabama State NAACP v. City of Pleasant Grove (2019)*
*James v. Jefferson County Board of Education (2019)*

*Voketz v. City of Decatur (2018)*

**Arkansas**
*Mays v. Thurston (2020)*-- Covid-19 demographics only)

**Connecticut**
*NAACP v. Merrill (2020)*

**Florida**
*Florida State Conference of the NAACP v. Lee, et al., (2021)*
*Calvin v. Jefferson County (2016)*
*Thompson v. Glades County (2001)*
*Johnson v. DeSoto County (1999)*
*Burton v. City of Belle Glade (1997)*

**Georgia**
*Alpha Phi Alpha Fraternity et al. v Raffensberger (2022)*
*Pendergrass v. Raffensberger (2022)*
*Dwight v. Kemp (2018)*
*Georgia NAACP et al. v. Gwinnett County, GA (2018*
*Georgia State Conference NAACP et al v. Georgia (2018)*
*Georgia State Conference NAACP, et al. v. Fayette County (2015)*
*Knighton v. Dougherty County (2002)*
*Johnson v. Miller (1998)*
*Jones v. Cook County (1993)*

**Kentucky**
*Herbert v. Kentucky State Board of Elections (2013)*

**Louisiana**
*Power Coalition for Equity and Justice v. Edwards (2020),* Covid-19 demographics only
*Johnson v. Ardoin (2019*
*NAACP v. St. Landry Parish Council (2005)*
*Prejean v. Foster (1998)*
*Rodney v. McKeithen (1993)*

**Maryland**
*Baltimore County NAACP v. Baltimore County (2022)*
*Benisek v. Lamone (2017)*
*Fletcher  v. Lamone (2011)*

**Mississippi**
*Partee v. Coahoma County (2015)*
*Figgs v. Quitman County (2015)*
*West v. Natchez (2015)*
*Williams v. Bolivar County (2005)*
*Houston v. Lafayette County (2002)*
*Clark v. Calhoun County (on remand)(1993)*

*Teague v. Attala County (on remand)(1993)*
*Wilson v. Clarksdale (1992)*
*Stanfield v. Lee County(1991)*

**Montana**
*Alden v. Rosebud County (2000)*

**North Carolina**
*Lewis v. Alamance County (1991)*
*Gause v. Brunswick County (1992)*
*Webster v. Person County (1992)*

**Rhode Island**
*Davidson v. City of Cranston (2015)*

**South Carolina**
*Thomas v. Andino (2020),* Covid-19 demographics only
*Vander Linden v. Campbell (1996*

**South Dakota**
*Kirkie v. Buffalo County (2004*
*Emery v. Hunt (1999)*

**Tennessee**
*NAACP v. Frost, et al. (2003)*

**Virginia**
*Moon v. Beyer (1990)*

***Washington***
*Glatt v. City of Pasco (2016)*
*Montes v. City of Yakima (2014*

# # #

Exhibit B

## Population Shifted From 2011 Benchmark Plan to 2022 Adopted Plan

| NAME20 | VTD | Precinct Name | 2020 Pop. | 18+ Pop | 18+ AP Black | 18+ Latino | NH18+ Wht | From Benchmark 2011 CD | To Adopted CD 2022 | % 18+ AP Black |
|--------|-----|---------------|-----------|---------|--------------|------------|-----------|------------------------|--------------------|----------------|
| Adams Total | | | 29538 | 23528 | 13025 | 913 | 9260 | 03 | 02 | 55.36% |
| Amite Total | | | 12720 | 10239 | 3867 | 92 | 6125 | 03 | 02 | 37.77% |
| Clarke | 28023000105 | Langsdale | 126 | 95 | 73 | 0 | 21 | 04 | 03 | 76.84% |
| Clarke | 28023000205 | Shubuta | 849 | 682 | 549 | 4 | 124 | 04 | 03 | 80.50% |
| Clarke | 28023000501 | Manassa | 214 | 162 | 9 | 0 | 148 | 04 | 03 | 5.56% |
| Clarke | 28023000502 | Pierce's Springs | 215 | 166 | 88 | 0 | 75 | 04 | 03 | 53.01% |
| Clarke | 28023000504 | Carmichael | 471 | 388 | 116 | 4 | 266 | 04 | 03 | 29.90% |
| Clarke Total | | | 1875 | 1493 | 835 | 8 | 634 | 04 | 03 | 55.93% |
| Franklin Total | | | 7675 | 6069 | 2014 | 39 | 3966 | 03 | 02 | 33.19% |
| Hinds | 28049000105 | 37 | 1495 | 1190 | 592 | 56 | 533 | 03 | 02 | 49.75% |
| Hinds | 28049000113 | 45 | 2754 | 2201 | 673 | 43 | 1428 | 03 | 02 | 30.58% |
| Hinds | 28049000206 | 16 | 543 | 329 | 271 | 1 | 50 | 02 | 03 | 82.37% |
| Hinds | 28049000501 | 1 | 2227 | 2039 | 1172 | 60 | 764 | 03 | 02 | 57.48% |
| Hinds | 28049000515 | 47 | 1375 | 1154 | 893 | 53 | 195 | 03 | 02 | 77.38% |
| Hinds Total | | | 8394 | 6913 | 3601 | 213 | 2970 | | | 52.09% |
| Jones | 28067000103 | Shady Grove | 4808 | 3453 | 995 | 317 | 2070 | 04 | 03 | 28.82% |
| Jones | 28067000104 | Sharon | 3928 | 2939 | 856 | 123 | 1927 | 04 | 03 | 29.13% |
| Jones | 28067000207 | Matthews | 739 | 585 | 65 | 5 | 505 | 04 | 03 | 11.11% |
| Jones | 28067000308 | Sandersville Civic ( | 1404 | 1064 | 119 | 16 | 755 | 04 | 03 | 11.18% |
| Jones Total | | | 10879 | 8041 | 2035 | 461 | 5257 | 04 | 03 | 25.31% |
| Madison | 28089000101 | Pleasant Gift Churc | 0 | 0 | 0 | 0 | 0 | 03 | 02 | 0.00% |
| Madison | 28089000407 | Canton Fire Station | 0 | 0 | 0 | 0 | 0 | 03 | 02 | 0.00% |
| Madison | 28089000996 | Cedar Grove | 0 | 0 | 0 | 0 | 0 | 03 | 02 | 0.00% |
| Madison Total | | | 0 | 0 | 0 | 0 | 0 | 03 | 02 | 0.00% |
| Marion Total | | | 24441 | 18669 | 5791 | 245 | 12302 | 04 | 03 | 31.02% |
| Oktibbeha | 28105000104 | Self Creek/Double | 974 | 787 | 123 | 10 | 637 | 03 | 01 | 15.63% |
| Oktibbeha | 28105000303 | Bell Schoolhouse | 496 | 403 | 253 | 2 | 146 | 01 | 03 | 62.78% |
| Oktibbeha | 28105000304 | Center Grove/Nor | 563 | 456 | 208 | 3 | 240 | 01 | 03 | 45.61% |
| Oktibbeha | 28105000403 | Craig Springs/Sout | 94 | 67 | 7 | 1 | 59 | 01 | 03 | 10.45% |
| Oktibbeha | 28105000405 | Sturgis/North Brac | 21 | 14 | 7 | 0 | 7 | 01 | 03 | 50.00% |
| Oktibbeha Total | | | 2148 | 1727 | 598 | 16 | 1089 | | | 34.63% |
| Wilkinson Total | | | 8587 | 6879 | 4599 | 59 | 2171 | 03 | 02 | 66.86% |
| Winston Total | | | 17714 | 13650 | 6048 | 143 | 7263 | 01 | 03 | 44.31% |
| Grand Total | | | 123971 | 97208 | 42413 | 2189 | 51037 | | | 43.63% |

Exhibit C-1



Illustrative Plan 1

Water Area

Mississippi U.S. House

Exhibit C-2

# Population Summary Report

**Mississippi Congressional Plan  – Februrary 17, 2022 Draft**

| District | Population | Deviation | % Deviation | 18+_Pop | 18+ AP Black | % 18+ AP Black | 18+ Latino | % 18+ Latino | 18+ NH White | % 18+ NH White |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 740319 | -1 | 0.00% | 569508 | 151985 | 26.69% | 17593 | 3.09% | 383827 | 67.40% |
| 2 | 740320 | 0 | 0.00% | 569020 | 309099 | 54.32% | 13085 | 2.30% | 234173 | 41.15% |
| 3 | 740322 | 2 | 0.00% | 571940 | 239670 | 41.90% | 12837 | 2.24% | 303985 | 53.15% |
| 4 | 740318 | -2 | 0.00% | 567131 | 122326 | 21.57% | 25122 | 4.43% | 393466 | 69.38% |
| **Total** | **2961279** | | | **2277599** | **823080** | **36.1%** | **68637** | **3.0%** | **1315451** | **57.8%** |
| **Total Deviation** | | | **0.00%** | | | | | | | |

Exhibit D-1



**Illustrative Plan 2**

Water Area

0          40          80

Miles

**Mississippi  U.S. House**

Exhibit D-2

## Population Summary Report

**Mississippi Congressional Plan  – Februrary 24, 2022 Draft**

| District | Population | Deviation | % Deviation | 18+_Pop | 18+ AP Black | % 18+ AP Black | 18+ Latino | % 18+ Latino | 18+ NH White | % 18+ NH White |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 740320 | 0 | 0.00% | 569780 | 149380 | 26.22% | 17421 | 3.06% | 386594 | 67.85% |
| 2 | 740316 | -4 | 0.00% | 569057 | 310608 | 54.58% | 13667 | 2.40% | 231418 | 40.67% |
| 3 | 740325 | 5 | 0.00% | 571631 | 240766 | 42.12% | 12427 | 2.17% | 303973 | 53.18% |
| 4 | 740318 | -2 | 0.00% | 567131 | 122326 | 21.57% | 25122 | 4.43% | 393466 | 69.38% |
| **Total** | **2961279** | | | **2277599** | **823080** | **36.1%** | **68637** | **3.0%** | **1315451** | **57.8%** |
| **Total Deviation** | | | **0.00%** | | | | | | | |