IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN ROBERT SMITH, SHIRLEY HALL
AND GENE WALKER                                                                      PLAINTIFFS

VS.                                                    Civil Action No. 3:01-cv-855-HTW-DCB

DELBERT HOSEMANN, Secretary of State of
Mississippi; JIM HOOD, Attorney General for the State of
Mississippi; HALEY BARBOUR,
Governor of the State of Mississippi; MISSISSIPPI
REPUBLICAN EXECUTIVE COMMITTEE; and
MISSISSIPPI DEMOCRATIC EXECUTIVE
COMMITTEE                                                                           DEFENDANTS

and

BEATRICE BRANCH, RIMS BARBER,
L.C. DORSEY, DAVID RULE,
JAMES WOODWARD, JOSEPH P. HUDSON,
and ROBERT NORVEL
INTERVENORS

CONSOLIDATED WITH

KELVIN BUCK, ET AL.                                                                  PLAINTIFFS

VS.                                                    Civil Action No. 3:11-cv-717-HTW-LRA

HALEY BARBOUR, ET AL.                                                               DEFENDANTS

---

**REBUTTAL MEMORANDUM OF AUTHORITIES IN SUPPORT
OF MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE'S
MOTION TO VACATE INJUNCTION AND FOR OTHER RELIEF**

The brief of Hollis Watkins[1] reveals that, despite his counsel's representations at the hearing, he does not claim that H.B. 384 violates the results test of § 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301. Counsel said that an expert would address "the ability of black voters in the Second District able to elect the candidate of their choice" [2/2/22 Tr. 17], suggesting, "You can add folks who are not as politically active, . . . and it makes a difference as to whether or not the black voters are able to elect a candidate of their choice." [2/2/22 Tr. 19]. Neither plaintiff's two expert affidavits nor the brief allege that black voters "have less opportunity than other members of the electorate . . . to elect representatives of their choice," in the words of § 2(b).

Instead, he claims that the Legislature is guilty of unconstitutionally invidious racial discrimination because Senator Kirby "sought to keep the same BVAP percentages contained in the Court's plan" from 2011. [Dkt. #163 at 8 n.27]. An attempt to follow this Court's guidance is not proof of intentional racial discrimination, nor is the resolution of unavoidable compactness problems in a rural state, as this Court has recognized for 20 years. *Smith v. Clark*, 189 F. Supp. 2d 529, 541 (S.D. Miss. 2002), *aff'd sub nom. Branch v. Smith*, 538 U.S. 254 (2003).

No evidentiary hearing is required under Fed.R.Civ.P. 60(b)(5), and plaintiff has given this Court no reason to believe that he can prove his allegation of intentional racial discrimination. This Court should grant the relief requested by the motion on the basis of the evidence before it.

### ARGUMENT

**I.     THIS COURT MAY GRANT THE MOTION ON THE BASIS OF THE EVIDENCE IN THE RECORD.**

---

[1] The seven *Buck* plaintiffs sought relief only on the theory of unconstitutional malapportionment. [Dkt. #6 ¶¶ 3, 53-54]. Because no one contends that H.B. 384 is unconstitutionally malapportioned, the only issue remaining in the case concerns the boundaries of the District 2. Hollis Watkins of Hinds County is the only plaintiff residing in District 2. [Dkt. #6, ¶3]. He purports to act on behalf of all African-American citizens and voters [Dkt. #6 ¶4], although he has never sought to certify a class. His counsel confirmed at the hearing that Watkins represents the interests of the incumbent, Representative Thompson. [2/2/22 Tr. 28].

Although this Court must satisfy itself as to its jurisdiction, there is no jurisdictional dispute among the parties. Plaintiff agrees that this Court may grant relief from the injunction where there has been a significant change in law or fact. [Dkt. #163 at 15]. He admits that the facts have changed so as to create malapportionment, but he denies that there has been a change in the law.

When this Court issued both of its previous injunctions, Mississippi fell within the terms of § 4(b) of the VRA, 52 U.S.C. § 10303(b). Because Mississippi met § 4(b)'s coverage formula, this Court's injunctions required that any new statute be precleared under § 5, 52 U.S.C. § 10304. The change in the law is that the Supreme Court declared § 4(b) unconstitutional in *Shelby County v. Holder*, 570 U.S. 529 (2013). Mississippi no longer need have its statutes approved under § 5.

Although plaintiff's counsel told this Court that "[p]reclearance is no longer required" [2/2/22 Tr. 12], he now complains that H.B. 384 has not been precleared. [Dkt. #163 at 17]. The Department of Justice document discontinues preclearance "unless they are covered by a separate court order entered under Section 3(c) of the Voting Rights Act," 52 U.S.C. § 10302(c). [Dkt. #163-1]. Neither of this Court's prior injunctions was entered under § 3(c); indeed, plaintiff recognizes that this Court could have issued no such order because this Court never made a finding of intentional discrimination. [Dkt. #163 at 17]. *Accord, Perez v. Abbott*, 390 F.Supp.3d 803, 813 (W.D. Tex. 2019).

Plaintiff claims that defendants are entitled to no relief because they have not complied with the injunction. [Dkt. #163 at 17-18]. To the contrary, these defendants have faithfully followed this Court's instruction in conducting every congressional election of the last 20 years. The Legislature is not a party to this suit, but it has now adopted a four-district plan, as this Court has urged for two decades. Nobody can seek approval of that plan under § 5, because § 5 no longer

2

applies to Mississippi. The question to be decided on this motion is whether H.B. 384 is constitutional, as the prior injunctions have required.

No case says that relief on a Rule 60(b)(5) motion requires an evidentiary hearing. Watkins relies on *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697, 699 (5th Cir. 1955), in which the Court said that a movant under Rule 60(b) "was entitled to a full hearing on the merits of its motions." A full hearing on a motion need not involve live witnesses; Fed.R.Civ.P. 43(c) leaves it to the Court's discretion whether to "hear the matter on affidavits or . . . wholly or partly on oral testimony or on depositions." *Federal Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558-59 (5th Cir. 1987) (no evidentiary hearing necessary absent "convincing factual disputes . . . material to our decision"). All parties have had a full opportunity to present evidence and, as will be seen, none of that evidence suggests the need for an evidentiary hearing.

## II.    H.B. 384 DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.

Plaintiff's witness Anthony Fairfax opined that "[t]he H.B. 384 plan performs substandard to the NAACP plan" regarding the neutral redistricting factors previously identified by this Court. [Dkt. #164 ¶9]. Kareem Crayton opined that there were "better reasons" to obtain new voters from Madison and Hinds County than from southwest Mississippi. [Dkt. #165-2 at 8]. The proposed amicus brief filed Friday morning offers two more plans which they prefer to H.B. 384. [Dkt. #169-1 at 26-33]. Opinions abound, but the Legislature's judgment must be respected unless it violates the Equal Protection Clause. It does not.

### A.    There is no evidence of invidiously discriminatory intent.

Plaintiff claims that invidiously discriminatory intent infects H.B. 384, even though he does not contend that the effort resulted in racial discrimination in violation of § 2. He must overcome the presumption of constitutionality by "demonstrating that the legislature

3

'subordinated' other factors – compactness, respect for political subdivisions, partisan advantage, what have you – to 'racial considerations.'" *Cooper v. Harris*, 137 S.Ct. 1455, 1463-64 (2017), quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995).  He claims to have done so by submitting "evidence that the legislature subordinated compactness, adding growth areas to the underpopulated CD2, not making CD2 unnecessarily and unusually large, and not purposefully placing different unconnected communities of interest in CD2." [Dkt. #163 at 12].  The evidence fails to demonstrate racial motivation because plaintiff cannot "negative every conceivable basis which might support it."  *League of United Latin American Citizens v. Edwards Aquifer Auth.*, 937 F.3d 457, 471 (5th Cir. 2019), quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993).  Plaintiff must "show that the State has relied on race in *substantial* disregard of customary and traditional districting practices."  *Chen v. City of Houston*, 206 F.3d 502, 506 (5th Cir. 2000) (emphasis in original), quoting *Miller*, 515 U.S. at 928 (O'Connor, J., concurring).  If H.B. 384 is not unconstitutional, "the district court must accept" it and cannot "choose what might be considered to be the 'superior' plan."  *Wright v. City of Houston*, 806 F.2d 634, 635 (5th Cir. 1986).

Plaintiff's principal circumstantial evidence is that the Legislature was "purposefully placing different unconnected communities of interest in CD2."  [Dkt. #163 at 12].  This Court knew from the outset that, because of losing a district, "respecting each regional community of interest became problematic when we were required to combine two districts into a single district." *Smith*, 189 F.Supp.2d at 543.  The Court recognized that "east central Mississippi [and] southwest Mississippi" were separate communities, *id.*, at 543-44, but "combining old districts 3 and 4 as much as possible would have the initial effect . . . of being less disruptive to the other three established districts."  *Id.*, at 544.  H.B. 384 separates southwest Mississippi from east central Mississippi, uniting it with "the Mississippi River/Delta region," also recognized as a community

4

of interest. *Id.*, at 543. That decision, far from being evidence of intentional racial discrimination, is supported by Senator Kirksey's expert testimony that it "incorporates a population that is pretty much the same from Tunica all the way down to Wilkinson County." [1/28/02 Tr. 29].

Plaintiff asserts that Crayton opined that the four southwest Mississippi counties "appear to be a distinct community of interest from the existing district." [Dkt. #163 at 10].[2] Even indulging the unwarranted assumption that Crayton knows southwest Mississippi better than Senator Kirksey, that only establishes that southwest Mississippi must necessarily be united with another community of interest, not that it is discriminatory to add it to the River/Delta region.[3] Crayton simply asserts that it would have been better to add necessary population from Madison and Hinds County [Dkt. #165-2 at 8], but he offers no analysis of the interests of those precincts, and he gets his history wrong.

He asserts that "the origins of the congressional district are rooted farther north in the consolidated rural counties in the Delta, and the population center for that district was the Jackson metro area." [Dkt. #165-2 at 6]. On the contrary, the Delta district created in 1982 excluded Hinds County [Dkt. #156-4], and the 1984 modification left the entire City of Jackson in the southwest Mississippi district. [Dkt. #156-5]. Although Crayton asserts that "[i]n the modern era of redistricting, . . . the Natchez region has not been combined with the City of Jackson in a single congressional district" [Dkt. #165-2 at 7], much of Jackson remained in the southwest Mississippi district even after the Legislature added black neighborhoods to the Delta district in 1992 in Miss. Code Ann. § 23-15-1037. This Court 20 years ago maintained the division of Jackson because its

---

[2] He also asserts that Crayton opined that "there appears to be no rational basis for adding these four counties" [Dkt. #163 at 10], but no such opinion appears in the report.

[3] Based on his examination of municipal websites, Crayton asserts that there is a community of interest among all the areas that will celebrate Mardi Gras tomorrow [Dkt. #165-2 at 6 & n.5], but he makes no effort to measure the drive from Natchez to Kreole.

5

mayor testified "that he preferred the City be represented by two congresspersons." *Smith*, 189 F. Supp. 2d at 543. Crayton opined that the Legislature should have "maintained the Jackson area in a single district" [Dkt. #165-2 at 8], but there is no evidence that the current mayor agrees with him. While plaintiff complains that the Legislature should have "plac[ed] all of the incumbent Congressmen home counties in their respective districts" [Dkt. #163 at 13], there is no testimony that northeast Jackson shares any community of interest with the incumbent's home town of Bolton. Since the new Delta district was created in 1982, none of the three elected Representatives has ever represented northeast Jackson, nor indicated any interest in doing so.

At most, then, plaintiff's evidence suggests that the four southwest Mississippi counties differ in some respects from other areas. Because those four counties are not populous enough to support their own Congressional district, they have to be united with somebody else. Senator Kirksey's uncontradicted expert testimony provides an adequate nondiscriminatory reason why the Legislature might have chosen to unite those areas with the rest of the River counties.

Plaintiff asserts that the decision to extend District 2 down the River made "CD2 unnecessarily and unusually large" [Dkt. #163 at 12], and that the Legislature "unnecessarily enlarge[ed] the distance of travel in CD2." [Dkt. #163 at 13]. Two decades ago this Court recognized that, because of the decrease to four districts, "the distances of travel within the districts are increased." *Smith*, 189 F. Supp. at 545. Driving distances were increased in District 2, "but this is unavoidable in the light of the population deficit in former district 2." *Id*. People have continued to desert District 2 over the last 20 years, so the Legislature had to add acreage. Fairfax calculates that the driving distance within District 2 under H.B. 384 is 323.48 miles [Dkt. #164-3 at 6], but this is less than the current driving distance of 327.42 miles across District 3. [Dkt. #164-3 at 1]. Racial discrimination had nothing to do with this Court's determination of driving

6

distances in its two injunctions, and plaintiff offers no reason to believe that the reassignment of the longest drive to District 2 has anything to do with racial discrimination.

Nor has plaintiff made a compelling case of lack of compactness, much less a lack that can be explained only by invidious discrimination. Fairfax asserts that the NAACP plan is superior to H.B. 384 on two out of three measurements of compactness. [Dkt. #164 ¶8]. His own calculations show that under H.B. 384 District 2 is more compact than District 3 under the Area/Convex Hull measurement. [Dkt. #151-2 at 4]. He does not contend that the other two measurements are in any way superior to Area/Convex Hull, nor does he compare the overall compactness of the four districts in the two plans. His analysis of the NAACP plan does not include any calculation of compactness at all. [Dkt. #151-3]. The NAACP plan is not so obviously superior to H.B. 384 that its rejection can be explained only by invidious racial discrimination.

Plaintiff blames the Legislature for not "adding growth areas to the underpopulated CD2." [Dkt. #163 at 12]. Of course, this Court assigned the growth area of Gluckstadt to District 2 20 years ago, *Smith,* 189 F. Supp. 2d at 544, but plaintiff 10 years ago asked this Court to reassign it to District 3. [Dkt. #6-6 at 7]. Plaintiff does not disclose his own reason for changing his mind about growth areas over the course of a decade, and he certainly has not established that the Legislature could only have acted from invidiously discriminatory motives in adhering to his prior wish to eliminate growth areas.

Plaintiff's supposed direct evidence of discrimination is that Senator Kirby acknowledged that "the Committee sought to keep the same BVAP percentages contained in the Court's plan." [Dkt. #163 at 8 n.27]. He makes no complaint that the Committee chose to follow this Court's guidance in other ways [Dkt. #163 at 6], and he does not explain why it was wrong to follow this Court's guidance in determining the racial composition of District 2. It does not establish a

7

dominant racial purpose under *Cooper* to try to satisfy the concerns of a federal court. Indeed, the Supreme Court has held that there is no discriminatory intent in following the guidance of a federal court where "the court's approval . . . gave the Legislature a sound basis for thinking that the interim plan satisfied all legal requirements." *Abbott v. Perez*, 138 S.Ct. 2305, 2328 (2018). The Legislature's admitted effort to match the demographic data previously approved by this Court is not evidence that race was the dominant factor in the adoption of H.B. 384.

Because Watkins has not satisfied *Cooper*'s test for proving that traditional factors were subordinated to race, defendants need not prove that H.B. 384 "serves a 'compelling interest' and is 'narrowly tailored' to that end." 137 S.Ct. at 1464, quoting *Bethune-Hill v. Va. State Bd. of Elections*, 137 S.Ct. 788, 800 (2017). Plaintiff's argument that § 2 does not require District 2 to take the form prescribed by H.B. 384 [Dkt. #163 at 14-15], echoed at length by the proposed amicus brief, therefore need not be reached.

Recognizing the insufficiency of the evidence, plaintiff seeks discovery [Dkt. #163 at 13 n.39], but does not suggest what he wants to discover. Plaintiff already has access to all the sorts of evidence deemed probative in *Cooper* and in *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977), but none of it offers significant evidence of intentional racial discrimination. In analogous circumstances in which a Court is asked to enter a final judgment, Fed.R.Civ.P. 56(d) requires an affidavit demonstrating that particular items of discovery are essential. Watkins has made no such effort. This Court should exercise its discretion under Rule 43(c) to resolve the motion on the evidence now before it.

     **B.    Hollis Watkins has neither alleged nor proved a cognizable injury.**

Plaintiff operates on the unspoken assumption that proof of invidious racial discrimination entitles him to relief, but that is not true. Watkins must also allege and prove that enforcement of H.B. 384 will injure him. "An injury is particularized if it 'affect[s] the plaintiff in a personal and

8

individual way.'" *Moore v. Bryant*, 205 F. Supp. 3d 834, 850 (S.D. Miss. 2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992), *aff'd*, 853 F.3d 245 (5th Cir. 2017). His brief does not demonstrate how residing in the black supermajority district devised by the Legislature instead of the black supermajority district he asks this Court to create has subjected him to "discriminatory treatment." 853 F.3d at 249.

His complaint asked this Court to create a District 2 having a BVAP of 61.81%. [Dkt. #6-5]. The plan created by the Court had a BVAP of 61.36%. [Dkt. #118-3]. Because the 40-year exodus from District 2 continues unabated, the BVAP had grown to 62.27% by the time of the 2020 census. [Dkt. #143-2]. H.B. 384 has a BVAP of 61.05%. [Dkt. #143-3].

Watkins does not even attempt to explain how District 2 created by H.B. 384 injures him. He simply claims that the Equal Protection Clause is violated by the Legislature's successful effort "to keep the same BVAP percentages contained in the Court's plan." [Dkt. #163 at 8, n.27]. His remedy for this supposed insult is the imposition of the NAACP plan, having a BVAP of 59.42 %. [Dkt. #151-3 at 3]. Whatever his injury may be, he does not explain how this remedy redresses it, as the law of standing requires. *Lujan*, 504 U.S. at 561.

What Watkins wants is a black supermajority district different from the one the Legislature created in attempting to follow this Court's guidance. If that is an injury at all, it is a political injury, not a constitutional injury. Watkins is not entitled to the relief he seeks.

### III. ALL DEADLINES SHOULD BE PRESERVED.

Not only has plaintiff failed to submit a proper motion seeking an extension of the qualifying deadline, the request is directly inconsistent with the position taken at the hearing. [2/2/22 Tr. 25:9-10]. *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996) ("the district court . . . is entitled to rely on statements made by counsel in open court"); *Hall v. GE Plastic*

9

*Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding"). The Court relied upon that statement when setting the briefing schedule which extends up to the day prior to the qualifying deadline. If plaintiff believes an extended qualifying deadline is needed, he should have filed a proper motion, made the argument at the hearing, and sought an earlier briefing schedule.

Plaintiff does not dispute any of the points set out in the briefing and supporting affidavits showing that an extended deadline will cause burden and confusion for election officials, who have much work to do between the qualifying deadline and the election. Plaintiff acknowledges that *Smith v. Clark*, 189 F. Supp. 2d 503 (S.D. Miss. 2002) (three-judge panel), and *Purcell v. Gonzales*, 549 U.S. 1 (2006) (per curiam), confirm that it is "generally true" that "federal courts should not interfere with states [sic] election processes on the eve of an election." [Dkt. #163 at 19]. Indeed, the only authority cited by plaintiff is *Caster v. Merrill*, 2022 WL 264819 (N.D. Ala. Jan. 24, 2002) (three-judge panel), which he admits was effectively invalidated when the United States Supreme Court stayed the district court's injunction in *Merrill v. Milligan*, 2022 WL 354467 (Feb. 4, 2022).

Plaintiff argues without proof that the deadline should be moved so that candidates are not confused about the contours of district lines. Plaintiff acknowledges, however, that the Joint Committee approved H.B. 384 on December 15, 2021 [Dkt. #163 at 19 & n.45], and candidates could not qualify until January 1, 2022. Miss. Code Ann. §§ 23-15-299(1)(a) & -359(3). Moreover, a candidate does not have to live in the district but need only be an inhabitant of the State. *See* U.S. Const., Art. I, § 2, cl. 2.

Plaintiff's suggestion that the Legislature and defendants failed to act expeditiously in crafting the redistricting plan and seeking to vacate the injunction is absurd. [Dkt. #163 at 3].

10

Sufficient census data was not made available to the states until September 16, 2021. *See* https://www.census.gov/programs-surveys/decennial-census/about/rdo/summary-files.html#P1. The Legislature diligently worked with a short timetable to draft a valid plan. This Court can take judicial notice that it costs money to call a special session. The plan was adopted by the full Legislature and signed into law by the Governor within the first month of the legislative session. Defendants sought relief from the injunction the morning the law was signed.   Indeed, it would set a terrible precedent for this Court to move election deadlines every ten years simply because someone has an objection to the State's redistricting plan.[4]

## CONCLUSION

Plaintiff's suggestion that the deadline be extended should be rejected.  Plaintiff is correct, though, that we are operating under exigent circumstances.  For this reason, the Court should resolve the motion as quickly as possible, find H.B. 384 constitutional, and vacate the injunction so the election officials can move forward to conduct a timely election.

RESPECTFULLY SUBMITTED, this the 28th day of February, 2022.

**MISSISSIPPI REPUBLICAN
EXECUTIVE COMMITTEE**

By:   */s/ Michael B. Wallace*
      MICHAEL B. WALLACE

---

[4] In the event the Court grants an extension to permit an evidentiary hearing or discovery, even in a limited capacity, compliance with the deadline for the start of absentee voting will be very difficult, if not impossible. Implementing redistricting into SEMS is a time-consuming process, as are other necessary steps in the build-up to an election so ballots can be prepared. Furthermore, any day that is missed for Uniformed Overseas Citizens Absentee Voting Act (UOCAVA) absentee voting will require communications with the Department of Justice due to mandates under the UOCAVA and the publication of emergency rules for UOCAVA voters.  An extension of the qualifying deadline alone, absent an extension of the corresponding election, would wreak havoc on the election process if the extension were for more than a couple of weeks.

**OF COUNSEL:**

Michael B. Wallace (MSB #6904)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Ph: (601) 968-5500
Fax: (601) 968-5519
mbw@wisecarter.com
cec@wisecarter.com

**CERTIFICATE OF SERVICE**

I, Michael B. Wallace, one of the attorneys for the Mississippi Republican Party Executive Committee, do hereby certify that I have this date filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record with ECF.

**SO CERTIFIED**, this the 28th day of February, 2022.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Michael B. Wallace*
　　　　　　　　　　　　　　　　　　　　　　　MICHAEL B. WALLACE