**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| JOHN ROBERT SMITH, SHIRLEY HALL AND GENE WALKER | **PLAINTIFFS** |
| VS. | Civil Action No. 3:01-cv-855-HTW-DCB-EGR |
| DELBERT HOSEMANN, Secretary of State of Mississippi; JIM HOOD, Attorney General for the State of Mississippi; HALEY BARBOUR, Governor of the State of Mississippi; MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE; and MISSISSIPPI DEMOCRATIC EXECUTIVE COMMITTEE | **DEFENDANTS** |
| and | |
| BEATRICE BRANCE, RIMS BARBER, L.C. DORSEY, DAVID RULE JAMES WOODWARD, JOSEPH P. HUDSON, and ROBERT NORVEL | **INTERVENORS** |

**CONSOLIDATED WITH**

| | |
|---|---|
| KELVIN BUCK, ET AL. | **PLAINTIFFS** |
| VS. | Civil Action No. 3:11-cv-717-HTW-LRA |
| HALEY BARBOUR, ET AL. | **DEFENDANTS** |

---

**PLAINTIFFS', KELVIN BUCK'S, THOMAS PLUNKETT'S, JEANETTE SELF'S, CHRISTOPHER TAYLOR'S, JAMES CROWELL'S, CLARENCE MAGEE'S, AND HOLLIS WATKINS', MOTION TO CORRECT FINDINGS OF FACT AND MAKE ADDITIONAL FINDINGS OF FACT IN THE MEMORANDUM OPINION AND ORDER ENTERED BY THE COURT ON MAY 23, 2022 [DOC. NO. 192]**

---

COME NOW the Plaintiffs, Kelvin Buck, Thomas Plunkett, Jeanette Self, Christopher Taylor, James Crowell, Clarence Magee, and Hollis Watkins ("the Buck Plaintiffs"), and, pursuant to Fed. R. Civ. P. 52(b), move the Court to correct certain findings contained in the

Court's Memorandum Opinion and Order entered on May 23, 2022, [Doc. No. 192], and make additional findings of fact on the following grounds:

1. The Court should amend the findings of fact contained in the Court's Memorandum Opinion and Order because the Opinion and Order incorrectly states that "the Buck Plaintiffs argue that H.B. 384…is also an impermissible racial gerrymander in violation of Section 2 of the Voting Rights Act of 1965 ("VRA")…[Doc. No. 192, p. 6]. The Buck Plaintiffs argued, in their Supplemental Memorandum of Authorities, [Doc. No. 163], that H.B. 384 is an unconstitutional racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. [1] The Buck Plaintiffs argued as follows:

    a. "[T]hat CD2 mentioned in H.B. 384 is an intentional racial gerrymander that has not been precleared." [Doc. No. 163, p. 10].
    b. "Although H.B. 384 is presumed to be constitutional, that presumption fades when plaintiffs challenge the bill as being an unconstitutional racial gerrymander with supporting evidence." [Doc. No. 163, p. 11].
    c. "However, the Buck plaintiffs challenge that plan on grounds that CD2 is an unconstitutional racial gerrymander." [Doc. No. 163, pp. 11-12].
    d. "H.B. 384 IS NOT CONSTITUTIONAL NOR PRECLEARED". [Doc. No. 163, p. 11].
    e. The Buck Plaintiffs explained the basis for their argument:

        > However, the Buck plaintiffs challenge that plan on grounds that CD2 is an unconstitutional racial gerrymander. The Buck plaintiffs have the burden of proving that '" race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district.'" *Cooper v. Harris*, 581 U. S. __, 137 S. Ct. 1455, 1463 (2017), quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254 (2015); *Bethune-Hill v. Va. State Bd. of Elections*, 580 U. S. ___, 137 S. Ct. 788 (2017); *Abbott v. Perez*, supra. To meet their burden, the Buck plaintiffs must "prove that the legislature subordinated *traditional race-neutral districting principles* … to racial considerations." *Ala. Legis. Black Caucus v. Alabama*, supra, at 272. (*Emphasis supplied*).   They can meet their burden of proof by

---

[1] Racial gerrymandering claims are asserted under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Abbott v. Perez*, 585 U. S. __, __, 138 S. Ct. 2305, 2314 (2018) ("The Equal Protection Clause forbids ''racial gerrymandering' that is, intentionally assigning citizens to a district on the basis of race without sufficient justification."), citing *Shaw v. Reno*, 509 U.S. 630, 641 (1993) (*Shaw I*). The Buck Plaintiffs argued throughout their Supplemental Memorandum of Authorities that H.B. 384 is an *unconstitutional* racial gerrymander. (Emphasis added).

2

"demonstrating that the legislature 'subordinated' other factors – compactness, respect for political subdivision, partisan advantage, what have you – to racial considerations." *Cooper v. Harris*, supra, 137 S. Ct. at 1463-64. The Buck plaintiffs have produced evidence that the legislature subordinated compactness [footnote omitted], adding growth areas to the underpopulated CD2, not making CD2 unnecessarily and unusually large, and not purposefully placing different unconnected communities of interest in CD2 to create or maintain a majority-minority district. Additionally, they have produced evidence that the Chair and Vice-Chair of the Joint Committee admitted that race was a predominant factor in shaping CD2. The Chair and Vice-Chair also admitted, during floor debates, that the Joint Committee had a target BVAP [footnote omitted] percentage they wanted to meet in CD2. The VRA does not require artificial targets of the number of voting age blacks needed in a district to afford black voters an opportunity to elect a representative of their choice. *Ala. Legis. Black Caucus v. Alabama*, supra (Section 5 of the VRA does not require a target number of minority voters to satisfy the non-retrogression standard.). Representative Robert Johnson and Senator Derrick Simmons, in floor debates, informed legislators that the state's plan subordinates the race-neutral redistricting criteria of compactness, not splitting existing communities of interests or combining divergent communities of interests [footnote omitted], not unnecessarily enlarging the distance of travel in CD2, placing all of the incumbent Congressmen home counties in their respective districts, and placing population growth areas in each congressional district to the Joint Committee's consideration of race. They offered alternative plans in their respective legislative chambers that maintained a black majority CD2 without subordinating racially neutral criteria to race. Legislators voted along racial lines to reject the alternative plans and adopt H.B. 384. This evidence is sufficient to prove that race was a predominant factor in the shape and racial composition of CD2. [Footnote omitted].

Since the Buck plaintiffs have established race as a motivating factor in the drawing of CD2, the burden shifts back to the defendants "to 'demonstrate that its districting legislation is narrowly tailored to achieve a compelling interest.'" *Bethune-Hill v. Va. State Bd. of Elections*, supra, 137 S. Ct. at 801; *Cooper v. Harris*, supra, 137 S. Ct. at 1464; *Shaw v. Hunt (Shaw II)*, 517 U.S. 899 (1996). The Supreme Court has assumed that compliance with the VRA is a compelling state interest. *Bethune-Hill v. Va. State Bd. of Elections*, supra; *Cooper v. Harris*, supra; *Abbott v. Perez*, supra. The defendants argue that H.B. 384 is narrowly tailored because it complies with Section 2 of the VRA. The Court should determine whether CD2 in H.B. 384 complies with Section 2 of the VRA or, instead, was crafted for a racially discriminatory purpose. See *Shaw II*, supra, at 916-918. To comply with Section 2, the three *Gingles* preconditions must be satisfied. *Thornburg v. Gingles*, 478 U.S. 30 (1986). Those preconditions are: (1) the minority group being large and geographically insular enough to constitute a majority in a single-member district; (2) the minority group is politically cohesive; and (3) white bloc voting is legally significant. See *Thomas v. Bryant*, 366 F. Supp.3d 786, 800 (S.D. Miss.2019), *aff'd* 938 F.3d 134 (5th Cir. 2019). A majority-minority district drawn to comply with Section 2 of the VRA that is not

geographically compact "is not narrowly tailored to the state's asserted interest in complying with [Section] 2 of the Voting Rights Act." *Shaw II* at p. 918. In drawing the black majority CD2, the defendants must also prove that they did not subordinate race-neutral redistricting criteria to the consideration of race. *Ala. Legis. Black Caucus v. Alabama*, supra, at 272. [Doc. No. 163, pp. 11-14].

1. The Buck Plaintiffs request the Court to make the following additional findings of fact:

    a. The Defendants' requested modification of the 2011 injunction, i.e. vacation (dissolution) of the injunction, is not suitably tailored to the changed circumstances of population shifts among Mississippi's congressional districts since the injunction was entered and the Supreme Court's 2013 decision in *Shelby County v. Holder* invalidating Section 4(b) of the VRA.
    b. The Defendants anticipated population shifts among Mississippi's congressional districts when the 2011 injunction was entered.
    c. The Defendants failed to satisfy their heavy burden of convincing the Court that the Mississippi Legislature made a good faith reasonable effort to have a constitutional congressional redistricting plan enacted.
    d. The Defendants did not produce a constitutional redistricting plan because race was the predominant factor motivating the legislature's decision to draw the second congressional district with a target black voting age population of 62.15% by subordinating traditional race-neutral districting principles to racial considerations.

WHEREFORE, PREMISES CONSIDERED, the Buck Plaintiffs respectfully request that the Court, pursuant to Fed. R. Civ. P.52(b) correct certain findings of fact contained in its Memorandum Opinion and Order, [Doc. No. 192], and make additional findings of fact as set out above.

The Buck Plaintiffs will file a separate memorandum of authorities in support of their motion, and they request such other equitable and general relief to which they may be entitled.

This the 2nd day of June, 2022.

> **RESPECTFULLY SUBMITTED,**
> **KELVIN BUCK, ET AL.,**
> **PLAINTIFFS**
>
> By:    */s/ Carroll Rhodes*
>          CARROLL RHODES

>CARROLL RHODES, ESQ., MSB # 5314
>LAW OFFICES OF CARROLL RHODES
>POST OFFICE BOX 588
>HAZLEHURST, MISSISSIPPI 39083
>TELEPHONE: (601) 894-4323
>FACSIMILE: (601) 894-1451
>e-mail: crhode@bellsouth.net
>
>JOHN L. WALKER, ESQ., MSB # 6883
>WALKER LAW GROUP, PC
>1410 LIVINGSTON LANE, SUITE A
>POST OFFICE BOX 22849
>JACKSON, MISSISSIPPI 39225-2849
>TELEPHONE: (601) 948-4589
>FACSIMILE: (601) 354-2507
>e-mail: jwalker@walkergrouppc.com
>
>E. CARLOS TANNER, III, ESQ.
>MSB NO. 102713
>TANNER & ASSOCIATES, LLC
>POST OFFICE BOX 3709
>JACKSON, MISSISSIPPI 39207
>TELEPHONE: (601) 460-1745
>FACSIMILE: (662) 796-3509
>e-mail: carlos.tanner@thetannerlawfirm.com
>
>COUNSEL FOR PLAINTIFFS
>KELVIN BUCK, ET AL.

## **CERTIFICATE OF SERVICE**

I, Carroll Rhodes, one of the attorneys for the Buck plaintiffs do hereby certify that I have this date filed the foregoing with the Clerk of the Court using the PACER/ECF system which sent notification of such filing to all counsel of record.

This the 2nd day of June, 2022.

>*/s/ Carroll Rhodes*
>CARROLL RHODES