IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| JOHN ROBERT SMITH, SHIRLEY HALL, AND GENE WALKER | PLAINTIFFS |
| VS. | Civil Action No. 3:01-cv-855-HTW-DCB-EGR |
| DELBERT HOSEMANN, Secretary of State of Mississippi; JIM HOOD, Attorney General for the State of Mississippi; HALEY BARBOUR, Governor of the State of Mississippi; MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE; and MISSISSIPPI DEMOCRATIC EXECUTIVE COMMITTEE | DEFENDANTS |
| and | |
| BEATRICE BRANCH, RIMS BARBER, L. C. DORSEY, DAVID RULE, JAMES WOODWARD, JOSEPH P. HUDSON, and ROBERT NORVEL | INTERVENORS |

CONSOLIDATED WITH

| | |
|---|---|
| KELVIN BUCK, ET AL. | PLAINTIFFS |
| VS. | Civil Action No. 3:11-cv-717-HTW-LRA |
| HALEY BARBOUR, ET AL. | DEFENDANTS |

_____

**PLAINTIFFS', KELVIN BUCK'S, THOMAS PLUNKETT'S, JEANETTE SELF'S, CHRISTOPHER TAYLOR'S, JAMES CROWELL'S, CLARENCE MAGEE'S, AND HOLLIS WATKINS', MEMORANDUM OF AUTHORITIES IN SUPPORT OF THEIR MOTION TO AMEND THE MEMORANDUM OPINION AND ORDER ENTERED BY THE COURT ON MAY 23, 2022 [DOC. NO. 192]**

_____

The plaintiffs, Kelvin Buck, Thomas Plunkett, Jeanette Self, Christopher Taylor, James Crowell, Clarence Magee, and Hollis Watkins ("the Buck Plaintiffs"), pursuant to Fed. R. Civ.

1

P. 59(e), submit this Memorandum of Authorities in Support of their Motion to Amend the Court's Memorandum Opinion and Order entered on May 23, 2022, [Doc. No. 192], on grounds that the Court needs to rectify its own mistakes and correct manifest errors of law and fact. This Memorandum of Authorities sets forth the standard of review on a Rule 59(e) motion, the relevant facts, an argument in favor granting the motion, and a conclusion.

### THE STANDARD OF REVIEW ON A RULE 59(e) MOTION.

Federal Rule of Civil Procedure 59(e)[1], unlike Rule 60(b)[2], "does not set forth any specific grounds for relief. "*Laverspere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990). The Rule "was added to the Federal Rules of Civil Procedure in 1946." *White v. N. H. Dep't of Employment Sec.*, 455 U. S. 445, 450 (1982). The purpose of the Rule is "to '[make] clear that the district court possesses the power' to rectify its own mistakes...in a decision on the merits" *White v. N. H. Dep't of Employment Sec.*, supra, at 450-451; *Banister v. Davis*, 590 U. S. ___ (2020). A district court may rectify its own mistakes by correcting "manifest errors of law or fact..." *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). In other words, a court possesses the power to rectify its own mistakes by correcting manifest errors of law or fact in it decision on the merits. *White v. N. H. Dep't of Employment Sec.*, supra, at 450-451; *Banister v. Davis*, supra; *Waltman v. International Paper Co.*, supra, at 473.

---

[1] Rule 59(e).

[2] Fed. R. Civ. P. 60(b).

2

**THE RELEVANT FACTS.**

The number of congressional seats allotted to the State of Mississippi following the 2000 Decennial Census was reduced from five to four. In 2002, this Court adopted a four-district congressional redistricting plan and ordered the defendants to implement the plan "adopted by this court in its order of February 4, 2002 [for the 2002 and subsequent] congressional primary and general elections...until the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." [Doc. No. 192, p. 3]. The four district plan contained one black majority congressional district with a black voting age population ("BVAP") of 59.20% . *Smith v. Clark*, 189 F. Supp.2d 512 (S. D. Miss. 2002) (three-judge court). The Court Order directed the parties "to show cause by written objections, why this court's redistricting plan, if implemented, would not satisfy all state and federal statutory and constitutional requirements; and to make any other critical comments and suggestions with respect to the plan that the parties deem appropriate." *Smith v. Clark*, supra, at 512. There were no objections, and the 2002 court-drawn plan was used for every congressional election in Mississippi from 2002 until after the 2010 Decennial Census.

The 2010 Decennial Census revealed that the court-drawn plan had become malapportioned. The legislature failed to redistrict and obtain preclearance of a new congressional redistricting plan by 2011. "Consequently, on December 30, 2011, [the

Court] entered [its] second final judgment amending [the Court's] February 26, 2002 final judgment." [Doc. No. 192, p. 3]. The Court's 2011 final judgment contained an injunction ordering the defendants to "implement the congressional redistricting plan adopted by [the] court in its order of December 19, 2011 [and conduct the 2011 and subsequent] congressional primary and general elections...until the State of Mississippi produces a constitutional congressional redistricting plan that is precleared in accordance with the procedures in Section 5 of the Voting Rights Act of 1965." [Doc. No. 192, pp. 3-4]. The Court ordered the parties to submit objections, suggestions, and comments to the court-drawn plan on or before December 22, 2011. *Smith v. Hosemann*, 852 F. Supp.2d 757, 762 (S. D. Miss. 2011) (three-judge court). The defendants did not object to the plan nor offer any comments or suggestions. *Id*. "In short, all parties accepted the court-drawn plan." *Id*. The Court used the following race-neutral criteria in drafting the court-drawn plan: (a) compactness; (b) avoid splitting county and municipal boundaries; © preserve, as much as possible, historical and regional interests; (d) maintain the major universities and military bases in separate districts; (e) place growth areas in separate districts; (f) avoid pitting incumbents against each other; and (g) keep the distance of travel within districts "approximately the same as they were under the Court's 2002 Plan." *Smith v. Hosemann*, supra, at 766-767.

The Court retained" jurisdiction to implement, enforce, and amend this judgment as shall be necessary and just." [Doc. No. 192, p. 4]. The 2011 court-drawn plan

4

contained one black majority congressional district with a 61.36% BVAP. The plan was used for every congressional election in Mississippi from 2012 until now.

The 2020 Decennial Census has revealed that the 2011 court-drawn plan is now malapportioned. The Standing Joint Congressional Redistricting Committee ("the Joint Committee"), the legislative committee responsible for congressional redistricting, adopted the Court's race-neutral criteria for redrawing congressional districts. "On January 24, 2022, for the first time since this court entered its 2002 final judgment, a new congressional redistricting statute for the State of Mississippi, H. B. 384, was signed into law by the Governor of the State of Mississippi." [Doc. No. 192, p.4].

The Mississippi Republican Party Executive Committee ("MREC") filed a Rule 60(b)(5)[3] motion, joined in by the other defendants and Smith plaintiffs, requesting the Court to "vacate its final judgment because the 2011 court-drawn plan is now malapportioned and H. B. 384 satisfies this court's instruction for the State of Mississippi to produce a constitutional congressional redistricting plan." [Doc. No. 192, pp. 2, 4-5]. The Buck plaintiffs oppose the defendants' motion, [Doc. No. 192, p. 5], and request the Court to amend its final judgment, instead of vacating it, because the State of Mississippi has not produced a constitutional redistricting plan that has been precleared, but, instead, produced an unconstitutional racially gerrymandered plan that has not been precleared.[4]

---

[3] Fed. R. Civ. P. 60(b)(5).

[4] The Buck plaintiffs recognize that the Supreme Court of the United States ("Supreme Court"), in *Shelby County v. Holder*, invalidated the preclearance formula of the VRA thereby relieving

"In drawing the new map, ...the Mississippi legislature packed thousands of Black Mississippians into District 2 ("CD2"), already a majority Black district which historically had elected a Black-preferred candidate by generous margins." [Doc. No. 192, p. 17, Wingate, *District Judge*, dissenting]. The Vice-Chair of the Joint Committee admitted, during Senate floor debate on H. B. 384, that race was the predominant reason for packing CD2. [Doc. No. 192, p. 17, Wingate, *District Judge*, dissenting]. "He explained, more specifically, that the State could have made CD 2 more compact, but the 'numbers just didn't work' – because [the BVAP would have decreased] below the state's racial target of at least 61.36%." [Doc. No. 192, p. 17, Wingate, *District Judge*, dissenting]. The 61.36% BVAP in CD2 was the same BVAP in the 2011 court-drawn plan.

The National Association for the Advancement of Colored People ("NAACP") submitted an alternative redistricting plan to the Joint Committee prior to the legislature passing H. B. 384, and that "plan is superior to the H. B. 384 plan when evaluating the redistricting factors of compactness, county & municipal boundaries, and distance of travel within the district." [Doc. No. 164, p. 4, Decl. of Anthony Fairfax]. In other words, the legislature subordinated race-neutral districting criteria to the consideration of race in

---

Mississippi from the requirement of obtaining preclearance of its congressional redistricting plan. However, their argument is essentially that the defendants failed to comply with this Court's injunction requiring preclearance of its congressional redistricting plan or request the Court for relief from that requirement. "An injunction duly issuing out of a court of general jurisdiction within equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error is the assumption of the validity of a seeming but void law going to the merit of the case." *Walker v. Birmingham*, 388 U. S. 307, 314 (1967).

enacting H. B. 384.

The Court held, in its Memorandum Opinion and Order, that "there have been significant changes in both the factual conditions and the law since this court entered the final judgment at issue, and thus movants have borne their burden to show a significant change in circumstances that warrants relief under Rule 60(b)(5)." [Doc. No. 192, p. 12]. The significant change in circumstances advocated by the defendants are (1) a significant change in facts and (2) a significant change in the law. [Doc. No. 156]. The significant change in factual conditions is that the 2011 court-drawn plan is now malapportioned. [Doc. No. 156]. The significant change in law is that Mississippi is no longer required to preclear congressional redistricting plans after the Supreme Court's decision in *Shelby County v. Holder*. [Doc. No. 192, pp. 10-12]. Based on those two changes, the Court held "that it is inequitable under Rule 60(b)(5) for our 2011 final judgment to continue to be applied prospectively..." [Doc. No. 192, p. 12].

The defendants anticipated population shifts among the congressional districts would occur between the 2010 and 2020 Decennial Censuses causing the districts to become malapportioned. The defendants were parties to this litigation in 2002 when this Court first adopted a four-district congressional redistricting plan and issued an injunction implementing that plan. The defendants knew the population in each congressional district in the 2002 court-drawn plan. The defendants were parties to the litigation in 2011 when the Court had to amend its injunction and adjust the 2002 congressional district lines

7

because population shifts among the districts between the 2000 Decennial Census and the 2010 Decennial Census made the districts malapportioned. The defendants agreed that the Court should issue the 2011 injunction implementing the court-drawn plan. The defendants, armed with this historical knowledge, anticipated that population shifts would occur between the 2010 and 2020 Decennial Censuses which were likely to result in malapportioned districts.

The defendants argue that H. B. 384 satisfies all applicable constitutional provisions. The Buck plaintiffs, however, argue that the H. B. 384 plan is an unconstitutional racial gerrymander because race was the predominant reason for packing CD2, and the legislature subordinated traditional race-neutral redistricting criteria to the consideration of race in the manner the district was drawn. Legislative leaders admitted, during floor debate, that race was the predominant reason CD2 contains a 62.15% BVAP. Therefore, the defendants failed to prove that the legislature made a good faith reasonable effort to produce a constitutional redistricting plan.

The defendants argue that the substantial change in law is that the VRA's preclearance coverage formula is unconstitutional. However, they have failed to prove a substantial change in the law concerning unconstitutional racial gerrymandering. In fact, there has not been a substantial change in the law concerning racial gerrymandering between the time the 2011 injunction was entered and today.[5]

---

[5] Nor has there been a substantial change in the law concerning the legality of Section 5 of the VRA and whether a defendant must comply with an injunction until it has been vacated.

## ARGUMENT IN FAVOR OF GRANTING THE MOTION

The Court's Majority essentially agrees with the defendants that a significant change in circumstances warrants vacation of th Court's 2011 injunction in its entirety. [Doc. No. 192, p. 12]. The defendants bear "the burden of establishing that a significant change in circumstances warrants" vacation of the Court's 2011 injunction. *Rufo v. Inmates of Suffolk County Jail*, 502 U. S. 367, 383 (1992); *Horne v. Flores*, 557 U. S. 433, 446-48 (2009). A party seeking to vacate an injunction "may meet its *initial burden* by showing a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk County Jail*, supra, at 384. (Emphasis added). The significant change in circumstances, offered by the defendants and accepted by the Court, are: (1) a change in facts and (2) a change in decisional law. The change in facts is that the 2011 court-drawn congressional redistricting plan is now malapportioned. The change in law is that the Supreme Court invalidated the VRA's preclearance formula which was used to determine which jurisdictions must seek preclearance of voting changes. *Shelby County v. Holder*, 570 U. S. 529 (2013). Although the Court invalidated the coverage formula, the Court did not invalidate Section 5 of the VRA. *Shelby County v. Holder*, supra. Nevertheless, the Court found that the defendants met their initial burden and vacated its 2011 injunction in its entirety.

However, analyzing whether the defendants met their initial burden for proving a significant change in circumstances warranting vacation of the injunction is not the end of the inquiry. The Majority should have, but did not, analyze whether the defendants met their heavy burden for vacating the injunction. "Ordinarily,...modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Rufo v. Inmates of Suffolk County Jail*, supra, at 385. The defendants anticipated, in 2011 when the

court-drawn plan and injunction were implemented, that population shifts would occur among the congressional districts by 2020. "[A]ll parties accepted the court-drawn plan." *Smith v. Hosemann*, supra, at 762. Therefore, vacation of the 2011 injunction should not be granted because the defendants "relied upon events that actually were anticipated at the time" the defendants accepted the 2011 injunction. *Rufo v. Inmates of Suffolk County Jail*, supra, at 385. "If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b)." *Rufo v. Inmates of Suffolk County Jail*, supra, at 385. It is clear from the record that the defendants had a heavy burden which they did not meet, and the Majority did not analyze whether they met their heavy burden.[6]

The Court's 2011 injunction implemented the court-drawn plan until the State of Mississippi produces (1) a constitutional plan (2) that has been precleared under the provisions of Section 5 of the VRA. The Buck plaintiffs and amici produced evidence and arguments that the State of Mississippi did not produce a constitutional plan. Rather, the State of Mississippi produced an unconstitutional racially gerrymandered plan. "The Equal Protection Clause forbids 'racial gerrymandering...'" *Abbott v. Perez*, 585 U. S. ___, 138 S. Ct. 2305, 2314 (2018). To prove an unconstitutional racial gerrymander, a plaintiff "must prove that 'race was the predominant factor motivating the legislature's decision to place a significant number of voters within or

---

[6]Judge Wingate's Dissenting Opinion analyzes whether the defendants met their heavy burden and concludes that they did not meet their burden.

10

without a particular district.'" *Cooper v. Harris*, 581 U.S. ___, ___, 137 S. Ct. 1456, 1463 (2017), quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 272 (2015), quoting *Miller v. Johnson*, supra, at 916.  The Supreme Court has assumed that compliance with the VRA is a compelling state interest allowing a legislature to use race as a predominant factor in redistricting.  *Wis. Legislature v. Wis. Elections Comm.* 595 U.S. ___ (2022) (per curiam); *Bethune-Hill v. Va. State Bd. of Elections*, supra, 137 S. Ct. at 801; *Cooper v. Harris*, supra, 137 S. Ct. at 1464; *Shaw v. Hunt*, 517 U.S. 899 (1996) *(Shaw II)*.  However, a plaintiff may still prove that the legislature impermissibly used race as a factor in redistricting by proving "that the legislature subordinated *traditional race-neutral districting principles...*to racial considerations." *Ala. Legis. Black Caucus v. Alabama*, supra, at 572.  The Buck plaintiffs and amici have proven that the State of Mississippi subordinated traditional race-neutral districting principles to racial considerations. Legislative leaders admitted that they sought to maintain the same BVAP percentage in CD2 in H. B. 384 as existed in the prior plan.  However, the VRA does not require a legislature to maintain the same target BVAP percentage in a new plan that existed in a prior plan.  *Ala. Legis. Black Caucus v. Alabama*, supra. H. B. 384 is an unconstitutional racial gerrymander.  Therefore, the defendants have not complied with the 2011 injunction because they have not produced a constitutional plan.

Furthermore, the defendants have not produced a plan that has been precleared under the provisions of Section 5 of the VRA.  They have not offered any proof that they attempted to obtain preclearance or sought relief from the Court's injunction requiring

preclearance.  Furthermore, an injunction must be obeyed, even if it is based on flawed law, until it is overturned.  *Walker v. Birmingham*, supra.

The defendants bear a heavy burden to prove that they made a reasonable effort to comply with the injunction. *Rufo v. Inmates of Suffolk County Jail*, supra, at 385.   And, they have not shown that they made a reasonable effort to comply with the injunction.

The Majority, nevertheless, vacates the 2011 injunction in its entirety without addressing whether the State of Mississippi has produced a constitutional redistricting plan. [Doc. No. 192, p. 14].  The Dissent, however, would not vacate the 2011 injunction in its entirety.[7]  The vacation of the injunction in its entirety raises an issue of the preclusive effect of the Majority's action.  See *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829 (5th Cir. 2006) ("In this circuit, collateral estoppel applies when a previously litigated issue of law or fact was identical to the present issue, actually litigated,

---

[7]Judge Wingate, in dissent, would amend the 2011 injunction by allowing congressional elections to proceed under a properly apportioned plan but retain jurisdiction to decide whether H. B. 384 is an unconstitutional racial gerrymander.  Judge Wingate opined:

> For the foregoing reasons, I am in favor of modifying the current injunction to allow presently scheduled elections to go forward, in view of the lateness of the hour, while addressing immediately the prerequisites for reaching a decision on the Section 2 interrogatory.
>
> I reach the above conclusion because H. B. 384 *may be* constitutionally flawed, while our injunction-preserved scheme is *certainly* constitutionally flawed.  The citizens of Mississippi should not have to be faced with these unsavory consequences–forced to endure under either an unconstitutional enactment or a possibly unconstitutional enactment–when we can begin the analysis now and, if necessary the curative process.

[Doc. No.  192, p. 25, Wingate, *District Judge*, dissenting].

necessary to a final judgment, and reviewed under the same standard as the present issue."). Consequently collateral estoppel could be used to preclude any future litigation concerning the constitutionality of H. B. 384.

The Majority, by vacating the 2011 injunction in its entirety and allowing H. B. 384 to go into effect, is creating and perpetuating a constitutional violation.  "Of course, a modification must not create or perpetuate a constitutional violation." *Rufo v. Inmates of Suffolk County Jail*, supra, at 391.  Furthermore, a court "must vigilantly enforce federal law and must not hesitate in awarding in awarding necessary relief." *Horne v. Flores*, supra, at 450.  The critical question on the defendants' Rule 60(b)(5) motion to vacate the 2011 injunction "is whether the objective of the [injunction] has been achieved." *Horne v. Flores*, supra, at 450.  The answer is a resounding "no".

**CONCLUSION**

On the basis of the foregoing facts and authorities, the Court should amend its Memorandum Opinion and Order vacating the 2011 injunction and final judgment by (1) modifying the 2011 injunction and final judgment instead of vacating it; (2) allow only the 2022 congressional elections to proceed as scheduled under a properly apportioned plan; (3); retain jurisdiction to decide whether the objective of the 2011 inunction and final judgment have been achieved; (4) schedule a trial in 2022 on the issue of whether H. B. 384 is constitutional; and, (5) decide whether it is no longer equitable that the judgment requiring the State of Mississippi to produce a constitutional congressional redistricting plan should have prospective application..

This the 8th day of June, 2022.

        RESPECTFULLY SUBMITTED,
        KELVIN BUCK, ET AL.,
        PLAINTIFFS

By: */s/ Carroll Rhodes*
     CARROLL RHODES

     CARROLL RHODES, ESQ., MSB # 5314
     LAW OFFICES OF CARROLL RHODES
     POST OFFICE BOX 588
     HAZLEHURST, MISSISSIPPI 39083
     TELEPHONE: (601) 894-4323
     FACSIMILE: (601) 894-1451
     e-mail: crhode@bellsouth.net

     JOHN L. WALKER, ESQ., MSB # 6883
     WALKER LAW GROUP, PC
     1410 LIVINGSTON LANE, SUITE A
     POST OFFICE BOX 22849
     JACKSON, MISSISSIPPI 39225-2849
     TELEPHONE: (601) 948-4589

>FACSIMILE: (601) 354-2507
>e-mail: jwalker@walkergrouppc.com
>
>E. CARLOS TANNER, III, ESQ.
>MSB NO. 102713
>TANNER & ASSOCIATES, LLC
>POST OFFICE BOX 3709
>JACKSON, MISSISSIPPI 39207
>TELEPHONE: (601) 460-1745
>FACSIMILE: (662) 796-3509
>e-mail:
>carlos.tanner@thetannerlawfirm.com
>
>COUNSEL FOR PLAINTIFFS
>KELVIN BUCK, ET AL.

**CERTIFICATE OF SERVICE**

I, Carroll Rhodes, one of the attorneys for the Buck plaintiffs do hereby certify that I have this date filed the foregoing with the Clerk of the Court using the PACER/ECF system which sent notification of such filing to all counsel of record.

This the 8th day of June, 2022.

>*/s/ Carroll Rhodes*
>CARROLL RHODES