UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN ROBERT SMITH, SHIRLEY HALL
and GENE WALKER                                                                           PLAINTIFFS

VS.                                                                  Civil Action No. 3:01-cv-855-HTW-DCB

DELBERT HOSEMANN, Secretary of State of
Mississippi; JIM HOOD, Attorney General for the State of
Mississippi; HALEY BARBOUR,
Governor of the State of Mississippi; MISSISSIPPI
REPUBLICAN EXECUTIVE COMMITTEE; and
MISSISSIPPI DEMOCRATIC EXECUTIVE COMMITTEE        DEFENDANTS

and

BEATRICE BRANCH, RIMS BARBER,
L.C. DORSEY, DAVID RULE,
JAMES WOODWARD, JOSEPH P. HUDSON,
and ROBERT NORVEL                                                                        INTERVENORS

**CONSOLIDATED WITH**

KELVIN BUCK, ET AL.                                                                         PLAINTIFFS

VS.                                                                  Civil Action No. 3:11-cv-717-HTW-LRA

HALEY BARBOUR, ET AL.                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

We have now received briefing from all the parties regarding the Plaintiffs', Kelvin Bucks', Thomas Plunkett's, Jeanette Self's, Christopher Taylor's, James Crowell's, Clarence Magee's, and Hollis Watkins', Motion to Amend the Memorandum Opinion and Order Entered by the Court on May 23, 2022 [DOC. NO. 192] (the "Buck Plaintiffs'

1

Motion for Reconsideration"), and the Plaintiffs', Kelvin Bucks', Thomas Plunkett's, Jeanette Self's, Christopher Taylor's, James Crowell's, Clarence Magee's, and Hollis Watkins', Motion to Correct Findings of Fact and Make Additional Findings of Fact in the Memorandum Opinion and Order Entered by the Court on May 23, 2022 [DOC. NO. 192] (the "Buck Plaintiffs' Motion to Correct Findings of Fact and Make Additional Findings of Fact"). In short, it appears that the Buck Plaintiffs are attempting to relitigate the merits of H.B. 384, urging the Court to conclude that H.B. 384 is an unconstitutional racial gerrymander in violation of the Equal Protection Clause. The motions are DENIED.

First, the Republican Party is correct that the Court did not make any findings of fact in its opinion because there was no trial or contest on the merits. These issues were decided under Rule 60(b)(5), not under summary judgment or following a bench trial. Thus, it follows that there are no findings of fact to correct.[1] Thus, the Buck Plaintiffs' Motion to Correct Findings of Fact and Make Additional Findings of Fact is denied.

Second, the Buck Plaintiffs' Motion for Reconsideration is denied because they ask the Court to address the merits of H.B. 384 and thus conclude that it violates the Equal Protection Clause and §2 of the VRA. The Buck Plaintiffs' argument is based on their incorrect interpretation of both Rule 60(b)(5) and *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992). That is, the Buck Plaintiffs argue that per *Rufo*, for the Court to vacate the injunction, the Republican Party must adequately bear its "heavy burden to convince the Court that they complied with the injunction."

Rule 60(b)(5), however, does not require that the enjoined party satisfy the injunction for the injunction to be vacated. FED. R. CIV. P. 60(b)(5) (permitting a court to relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; *or* applying it prospectively is no longer equitable" (emphasis added)); *Horne v. Flores*, 557 U.S. 433, 454 (2009) ("Use of the disjunctive 'or' [in Rule 60(b)(5)] makes it clear that each of the provision's three grounds for relief is independently sufficient and therefore that relief may be warranted even if petitioners have not 'satisfied' the original order."). Thus, as we have said in our opinion, defendants need not satisfy the injunction in order for it to be vacated

---

[1] With respect to the Buck Plaintiffs' assertion that the Court failed to acknowledge that they challenged H.B. 384 as a violation of the Equal Protection Clause of the Fourteenth Amendment, the Court directs the Buck Plaintiffs to that part of this Court's previous opinion where we clearly stated that we "considered, but [did] not decide[] the Buck Plaintiffs' allegations that H.B. 384 violates § 2 of the VRA and the Equal Protection Clause."

under Rule 60(b)(5) when prospective application has become inequitable, FED. R. CIV. P. 60(b)(5), malapportionment, and its consequences with respect to § 2 of the VRA as well, being reasons that prospectively applying this Court's 2011 injunction would be inequitable.

To be sure, *Rufo* is inapplicable in this case. *Rufo* addressed a consent decree, and the arguments of the Buck Plaintiffs relate to changed conditions underlying a consent decree, which are not present in this case. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992) (reviewing denial of a motion to modify a consent decree). The Buck Plaintiffs argument is that the parties to a consent decree cannot be relieved of their duty to perform under the decree by the occurrence of anticipated events; it follows, they say, that this Court was powerless to dissolve the injunction because the inequity of malapportionment was previously anticipated.

This principle is inapplicable in this case, however. A consent decree "embodies an agreement of the parties" and "is contractual in nature." *Rufo*, 502 U.S. at 378; *see also Frew v. Janek*, 820 F.3d 715, 721 (5th Cir. 2016) (describing consent decree as a "contract"). Typically, the terms of consent decrees are separately negotiated by the parties and later presented to the court for approval. *See United States v. City of New Orleans*, 947 F. Supp. 2d 601, 608-14 (E.D. La.) (discussing the process of consent decree negotiation by the parties and subsequent court approval), *aff'd*, 731 F.3d 434 (5th Cir. 2013). Thus, "[c]onsent decrees are construed according to general principles of contract interpretation." *Frew v. Janek*, 780 F.3d 320, 327-28 (5th Cir. 2015) (internal citation omitted).

The reapportionment in this case in 2011, however, was the result of an injunction issued by this Court that neither sought, required, nor acquired the consent of the parties. The parties did not negotiate the terms of the injunction and they did not present any agreement to this Court for approval. Indeed, it was an injunction. None of the parties to this Court's injunction had any contractual rights thereunder to withdraw, modify, or otherwise affect the injunction. In short, it was this Court's injunction that could only be changed, amended, or modified by this Court itself. Thus, the principles that may be applicable in consent decree cases are inapplicable here.

Finally, with respect to the Buck Plaintiffs' argument that "collateral estoppel could be used to preclude any future litigation concerning the constitutionality of H.B. 384," the

3

Buck Plaintiffs are incorrect. "Collateral estoppel prevents litigation of an issue only when: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 548 (5th Cir. 2013) (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)); *see also Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) ("To establish collateral estoppel under federal law, one must show: (1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action."). Although the issue of the constitutionality and legality of H.B. 384 raised in this case would likely be identical to the issues raised in a future case challenging H.B. 384, there has been no "determination" by this Court on those issues. Indeed, this Court declined to address "the Buck Plaintiffs' allegations that H.B. 384 violates § 2 of the VRA and the Equal Protection Clause," and explicitly stated that those issues were "unnecessary to our decision to vacate the 2011 final judgment under Rule 60(b)(5)." In short, collateral estoppel cannot bar a future challenge to the legality or constitutionality of H.B. 384.

We sum up: First, this Court did not make any findings of fact in its opinion and thus there are no findings of fact to correct; second, Rule 60(b)(5) does not require that the enjoined party satisfy the injunction for the injunction to be vacated; third, *Rufo* is inapplicable in this case because the 2011 reapportionment was not the result of a consent decree; and fourth, collateral estoppel cannot bar a future challenge to the legality or constitutionality of H.B. 384 because there has been no "determination" by this Court as to those issues. Accordingly, the Plaintiffs', Kelvin Bucks', Thomas Plunkett's, Jeanette Self's, Christopher Taylor's, James Crowell's, Clarence Magee's, and Hollis Watkins', Motion to Amend the Memorandum Opinion and Order Entered by the Court on May 23, 2022 [DOC. NO. 192] is DENIED, and the Plaintiffs', Kelvin Bucks', Thomas Plunkett's, Jeanette Self's, Christopher Taylor's, James Crowell's, Clarence Magee's, and Hollis Watkins', Motion to Correct Findings of Fact and Make Additional Findings of Fact in the Memorandum Opinion and Order Entered by the Court on May 23, 2022 [DOC. NO. 192], is DENIED.

**SO ORDERED**, this 25th day of July, 2022.

E. GRADY JOLLY
UNITED STATES CIRCUIT JUDGE

DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE

Henry T. Wingate, *District Judge*, dissenting, in part:

I agree with the majority that the Buck Plaintiffs' *Motion to Correct Findings of Fact and Make Additional Findings of Fact* must be denied. The majority did not make any findings of fact in its previous Opinion. I further agree that because the majority declined to address the Buck Plaintiffs' allegations that House Bill 384 ("H.B. 384") violates § 2 of the Voting Rights Act ("VRA")[1] and the Equal Protection Clause of the Fourteenth Amendment[2], collateral estoppel cannot bar a future challenge to the constitutionally or legality of H.B. 384.  I must, however, reiterate my disapproval of the majority's selected course of (in)action.

The majority has chosen to abandon its obligation to reach the merits of this lawsuit, to permit this litigation to fester as a potentially gnawing sore on the face of Mississippi jurisprudence and politics, and as a potential cleaver for further racial divide in a state which, too long, has prided itself as being one of the architects of the Confederate States of America[3].

A simple benefit/cost analysis with thunderous impact underscores the logic of this dissent, which seeks here a decision on the merits of this litigation: a revelation of a fully-disclosed record of how exactly this challenged map was developed and drawn. Consider the following:

The Mississippi Joint Congressional Redistricting and Legislative Reapportionment Committee ("the Committee") was tasked with redrawing Mississippi's Congressional

---

[1] Section 2 of the Voting Rights Act prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a)

[2] Section 1**.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV

[3] Mississippi gave the Confederacy Jeff Davis, its first and only President; Mississippi was the second state to secede from the United States; Mississippi was one of the last three of the eleven states of the Confederacy to rejoin the United States; and Mississippi waited until 1995 to ratify the Thirteenth Amendment, which abolished slavery still existing in  Delaware, Maryland, Missouri, Kentucky, and the District of Columbia, because the Emancipation Proclamation did not free slaves in these slave-holding states not at war with the United States.

1

map following the 2020 Census. [See Miss. Code Ann. § 5-3-121]. The Committee met three (3) times over the course of approximately six (6) months, during which times it performed the following tasks:

(1) elected the leadership of the Committee on June 30, 2021. This meeting lasted approximately 19 minutes and 22 seconds[4].

(2) adopted redistricting criteria on November 19, 2021 (10 minutes, 36 seconds)[5]; and

(3) proposed a Congressional redistricting plan on December 15, 2021 (17 minutes, 46 seconds)[6].

The Committee held nine (9) hearings across the state to solicit input from members of the public between August 5 and August 23, 2021. Mississippi Republican Executive Committee ("MREC") has stated that "sufficient census data was not made available to the states until September 16, 2021". [Docket no. 177, 11]. The public hearings, then, were held before U.S. Census data was released. Further, all of the hearings were held before the Committee had even put forth any proposed plan on December 15, 2021; consequently, the public did not have an opportunity to provide any public comment about the Committee's proposed plan at these various hearings. The full Legislature took up the Committee's proposed map as soon as the legislative session began on January 4, 2022. Clearly, this truncated, historical record opens the doorway to a myriad of questions: when were the real decisions made, by whom, on what statistical evidence?

A House Floor Meeting took place on January 6, 2022. The Committee's proposed plan was approved 75-44.[7] The Mississippi House of Representatives is comprised of 122 members. Forty (40) House representatives are African American. All forty (40) African

---

[4] Mississippi Legislature, Senate - Redistricting Committee - Room 216, 30 June 2021, 3:30PM, YouTube (June 30, 2021), https://www.youtube.com/watch?v=i13Dj0xYp84&t=314s

[5] Mississippi Legislature, Legislative Redistricting Committee - Room 216, 19 November 2021 10:00 A.M., YouTube (Nov. 19, 2021). https://www.youtube.com/watch?v=PhQAS6o3jXM

[6] Mississippi Legislature, Congressional Redistricting Committee - Room 216, 15 December 2021 10:00 A.M., YouTube (Dec. 15, 2021), https://www.youtube.com/watch?v=-mDs-EzHZUg&t=942s

[7] Mississippi Legislature, 2022 Regular Session, House Bill 384 (last updated on 6/14/22) http://billstatus.ls.state.ms.us/2022/pdf/votes/house/0030003.pdf

American Representatives voted against H.B. 384. They were joined by four (4) Caucasian Representatives.

A Senate Floor Meeting took place on January 12, 2022. The Mississippi Senate approved the congressional redistricting proposal 33-18[8]. The Mississippi State Senate is comprised of fifty-two (52) members, fourteen (14) of whom are African American. All fourteen (14) African American Senators, along with four (4) Caucasian Senators, voted against passing H.B. 384.

Seemingly, every elected African American in Mississippi's House of Representatives voted against the plan. So, too, every elected African American Mississippi State Senator voted against the plan. Nevertheless, with blinders on, the majority here trumpets: send this contentious, political hot potato back to the Mississippi Legislature for that body to address and resolve questions which already may have been addressed and ignored. Meanwhile, overlooks the majority, under their scheme, the scheduled forthcoming election will proceed, and maybe others, before this matter is resolved, allowing each 2022 successful candidate to build on his/her incumbency.

On January 24, 2022, Governor Tate Reeves signed into law House Bill 384, a new four-district congressional redistricting statute for the State of Mississippi. The full redistricting process, then, seemingly was completed in less than six (6) months. Much of the Committee's work was done in private.  Although members of the Committee made several statements about the "great deal of work" that went into the process of developing the Committee's map[9], this three-judge panel has before it no evidence which would provide insight into the Committee's deliberations. Importantly, this three-judge panel has before it no evidence showing that the Committee analyzed whether its Black Voting Age Population (BVAP) target of 62.15% in Congressional District 2 was actually necessary.

Two decades ago, when this panel first revealed its proposed injunction, it asked the parties to address whether the plan would "satisfy all state and federal statutory constitutional requirements." *Smith v. Clark,* 189 F. Supp. 2d 529, 542 (S.D. Miss. 2002)

---

[8] Mississippi Legislature, 2022 Regular Session, House Bill 384 (last updated on 6/14/22) http://billstatus.ls.state.ms.us/2022/pdf/votes/senate/0090005.pdf

[9] *See, e.g.*, Mississippi Legislature, *Congressional Redistricting Committee - Room 216, 15 December 2021 10:00 A.M.*, YouTube (Dec. 15, 2021), https://www.youtube.com/watch?v=-mDs-EzHZUg&t=942s (at 1:34).

(three-judge court), *aff'd sub nom. Branch v. Smith,* 538 U.S. 254 (2003). As the MREC stated in its Memorandum Brief in support of its motion to vacate, "[t]hat approach is equally important as this [three-judge panel] considers whether to permit the statute which the Legislature has now adopted to take effect in place of the current final judgment, which is now malapportioned." [Docket no. 144, p. 7].

The MREC further pointed out that "[o]ne of the maxims of equity, recognized in Mississippi, as throughout Anglo-American jurisdictions, is that "[e]quity delights to do complete justice and not by halves." V. Griffith, Mississippi Chancery Practice § 36 at 38 (2d ed. 1950). The objective is that "when the matter is thus settled there will be no doors left open out of which it is probable that further suits or further contention will spring." *Id.*, at 39. The MREC stated that "this [three-judge panel] should now examine all constitutional and statutory issues so as to close those doors." [ Docket no. 144, pp.7-8].

I agree. As do the Buck Plaintiffs, and before the majority took its hands-off stance, the MREC. Earlier in this dissent, I mentioned a benefit/cost analysis. The foregoing discussion unmistakably shows all the benefits of resolving the issue at hand on the merits. Commensurately, this discussion reveals no cost. Accordingly, for the foregoing reasons, I respectfully disagree with the majority, and submit this dissent to be read in conjunction with my earlier-voiced opposition.

4